NANNIE MCDANIEL, et al., Appellants, v. DANIEL MCELVY, et al., Appellees.

En Banc.

Opinion Filed May 3, 1926.

774

*Gex & Waller; W. J. Oven,* and *Fred Davis,* for Appellants;

*A. D. McNeill; Fleming, Hamilton, Diver & Fleming & Lichliter; Cooper, Knight, Adair, Cooper & Osborne;* and *E. Tillman Davis,* Amici Curiae.

## STATEMENT.

STRUM, J.—Following the procedure and seeking the relief provided by Chapter 11383, Laws of Florida (House Bill No. 296), passed at the Extraordinary Session of the Legislature November 17th to 25th, 1925, and approved by the Governor November 30th, 1925, the appellants, as complainants below, and who will hereafter be referred to as complainants, brought their bill of complaint in the Circuit Court of Leon County against divers persons, known and unknown, for the purpose of determining the title of complainants to certain real property, to remove certain clouds from such title, and to quiet and confirm the same in complainants. The bill of complaint was filed on December 5th, 1925.

Omitting formal parts, as well as those averments deraigning title to certain parcels of the land involved which are in effect repetitions of other averments which similarly deraign the title to other parcels, the bill of complaint is as follows:

"Now come Nannie McDaniel, Susie Miller, Virgie Hart, Jimmie McDaniel, Archie McDaniel, adults, and Sellars McDaniel, and Ludie McDaniel, minors, who sue by their mother and next friend, Nannie McDaniel, and present this their bill of complaint against Daniel McElvy, if living, and if dead, his unknown heirs at law, legatees, devisees, or grantees, David E. McElvy, if living, and if dead, his unknown heirs at law, legatees, devisees or grantees, Samuel L. Page, if living, and if dead, his unknown heirs at law, legatees, devisees and grantees, Noah McElvey, if living, and if dead, his unknown heirs at law, legatees, devisees and grantees, Francis M. Vose, if living, and if dead, his unknown heirs at law, legatees, devisees, grantees or assignees, Edward Livingston, if living, and if dead, his unknown heirs at law, legatees, devisees and grantees, or

assignees, Charles L. Perkins, if living, and if dead, his unknown heirs at law, legatees, devisees, grantees or assignees, William Bailey and John C. McGhee, as Trustees, if living, and if dead, their unknown grantees or successors in trust, Jeriah Richard, if alive, and if dead, his unknown heirs at law, legatees, devisees, or grantees, Edward H. Rhodes, if living, and if dead, his unknown heirs at law, legatees, devisees and grantees, and any and all persons claiming any right, title or interest in and to the following described land, to-wit:

The West half of Section two (2); the Southeast Quarter, and the Southeast Quarter of the Northeast Quarter of Section three (3); all in township two (2) South of Range 1 East, in Leon County, Florida, and would show unto the Court as follows:

First. That the complainant, Nannie McDaniel, is the widow of M. L. McDaniel, deceased; that the other complainants herein are the sons and daughters of said M. L. McDaniel, deceased, who departed this life intestate, leaving the above named complainants as his sole heirs at law; that all of the complainants are resident citizens of Leon County, Florida, and all are above the age of twenty-one years, except Sellars McDaniel and Ludie McDaniel, who are minors, and who sue herein, by their mother and next friend, Nannie McDaniel; that the complainants have made diligent search and inquiry to ascertain whether the defendants or any of them are living, and have been unable so to do, and that they have made diligent search and inquiry to ascertain the whereabouts of any of said defendants, if alive, and have been unable to ascertain whether any of the defendants are alive, and if alive, their places of abode, and post office address, or the names or whereabouts of any of their heirs at law, legatees, devisees or grantees.

Second. Complainants would show unto the court that they are tenants in common and owners in fee simple of the following described land:

The West half of Section two (2), the Southeast Quarter, and the Southeast Quarter of the Northeast Quarter of Section three (3), all in township two (2), South of Range 1 East, in Leon County, Florida,

and they deraign their title to said land as follows:

W½ of SW¼, Sec. 2 Tp. 2 S. Range 1 E.

(a) The West half of the Southwest Quarter of Section 2, Township 2, South of Range 1 East, was entered from the United States Government in 1851 by William Childers, as shown by the tract book in the office of the Commissioner of Agriculture of the State of Florida, at Tallahassee, and by the tract book of original entries in the United States Land Office at Gainesville, Florida.

(b) On May 22, 1852, William Childers conveyed said West Half of Southwest Quarter of said Section 2, aforesaid, to Daniel McElvy and David E. McElvy, two of the defendants in this cause;

(c) That there is no conveyance out of the said Daniel McElvy and David E. McElvy, or their heirs or devisees, but on February 6, 1889, the Tax Collector of Leon County, Florida, executed and delivered a tax deed to the said West half of said Southwest Quarter of Section 2, to M. L. McDaniel, the husband and father of the complainants herein, who died seized and possessed of said land, and from whom complainants inherited the same; the said tax deed is recorded in Deed Book CC, at page 26 of the deed records of Leon County, Florida.

(d) Complainants would show unto the court that the said tax deed was executed pursuant to a tax sale made in the year 1887 by the tax collector of Leon County, Florida, to the said M. L. McDaniel under tax certificate number 94, for the year 1886; that at the date of said sale the said

lands were assessed to unknown. Complainant would show unto the court that the said assessment and sale, and the issuance of said deed were in full compliance with the laws of the State of Florida, and vested in the said M. L. McDaniel a fee simple title to the lands aforesaid.

(e) The said defendants, Daniel McElvy and David E. McElvy do not appear to have ever conveyed the land hereinabove described, and for that reason the said Daniel McElvy and David E. McElvy, if alive, and if dead, their unknown heirs at law, legatees, devisees and grantees, are made parties defendant in this cause in order that any right, title or interest claimed by them may be cancelled and the title of the complainants quieted and confirmed.

Third. The E½ of SW¼ of Section 2, Tp. 2 S. Range 1 E.

The East half of the Southwest Quarter of Section 2, Township 2 South of Range 1 East, in Leon County, Florida, was entered from the United States Government by Noah McElvy on the 16th day of September, 1884, as shown by the tract book in the office of the Commissioner of Agriculture of the State of Florida in the Capitol Building at Tallahassee, and as shown by the tract book of original entries in the United States Land Office at Gainesville, Florida.

(a) There does not appear to be any conveyance out of the said Noah McElvy of record to any other person, nor any conveyance out of his heirs or devisees, but complainants would show unto the court that on March 7, 1887, the said lands last hereinabove described were sold by the Tax Collector of Leon County, for the unpaid taxes for the year 1886 to M. L. McDaniel, the husband and father of the complainants herein, and

(b) That on January 3, 1895, W. R. Wilson, and his wife executed and delivered to M. L. McDaniel, the husband and father of the complainants, a warranty deed to the

lands last hereinabove described, which deed is recorded in deed book 10 at page — of the Public Records of Leon County, Florida.

(c) That because of the fact that there is no conveyance out of Noah McElvy, the original entryman from the United States Government shown of record to said land the said Noah McElvy, if alive, and if dead, his unknown heirs at law, legatees, devisees or grantees, are made parties defendant to this suit, in order that all right, title and interest of the said Noah McElvy, or any person claiming by, through or under him in and to the lands last hereinabove described, may be cancelled, and the title of the complainant quieted and confirmed thereto.

\* \* \* \* \* \*

Fifth. The NE¼ of SE¼ and the SE¼ of NE¼ of Sec. 3, Tp. 2 S. Range 1 E.

(a) The said Northeast Quarter of Southeast quarter and the Southeast Quarter of the Northeast Quarter of Section 3, Township 2 South of Range 1 East, in Leon County, Florida, was patented by the United States Government on February 4, 1859, to the Pensacola & Georgia Railroad Company, pursuant to an act of Congress of May 17, 1856, as shown by the records in the office of the Commissioner of Agriculture of the State of Florida, at Tallahassee, Florida, and said lands were approved to the State of Florida for the benefit of the said railroad company February 4, 1859.

(b) In 1887 the Pensacola & Georgia Railroad Company, a corporation, executed a mortgage to Francis M. Vose, Edward Livingston and Charles L. Perkins, composing the firm of Vose, Livingston & Company on the lands herein above described, which mortgage was given to secure the purchase price of one thousand (1,000) tons of railroad iron to be shipped from England to St. Marks, Florida, at and for the price of fifty-three dollars (53.00) per ton,

which said mortgage does not appear to have been cancelled of record.

(c) Thereafter on September 22, 1858, the said Pensacola & Georgia Railroad Company executed another mortgage to the said Francis M. Vose, Edward Livingston and Charles L. Perkins, composing the firm of Vose, Livingston & Company, which said mortgage has not been cancelled of record.

(d) The complainants would show unto the court that the said mortgage and indebtedness due thereunder are barred by the Statutes of Limitations of the State of Florida, but complainants are advised, and believe that they are entitled to have the same cancelled of record, and for that reason the said Francis M. Vose, Edward Livingston, Charles L. Perkins, if alive, and if dead, their unknown heirs at law, legatees, devisees, or assignees, are made parties defendant hereto in order that the two mortgages hereinabove set forth may be cancelled of record.

(e) On April 1, 1860, the said Pensacola & Georgia Railroad Company executed a trust deed to William Bailey and John C. McGhee, as Trustees, to the lands last hereinabove described, which conveyance was in trust for the purpose of enabling the said trustees, or the survivor of them and their successors in trust, to sell and lease at their discretion the land last hereinabove described and with the proceeds thereof to pay the interest on certain bonds issued by the said railroad company, and to provide for a sinking fund for the discharge of the principal indebtedness of said bond.

(f) There is no conveyance out of the said William Bailey and the said John C. McGhee, as trustees, or any of their successors in trust, to the lands last hereinabove described, nor is there any revocation or cancellation of the said trust deed, and for that reason the said William Bailey and the said John C. McGhee, as trustees, and their succes-

sors in trust, if living, and if dead their unknown grantees, or successors in trust are made defendants to this bill of complaint in order that all right, title and interest of the said defendants, as trustees, or any persons claiming any right, title or interest by, through or under them, may be cancelled, as a cloud on the title of the complainants and the title to the complainants quieted and confirmed to said lands.

(g) Complainants would show unto the court that on March 7, 1887, the Tax Collector of Leon County, Florida, sold the lands last hereinabove described to the State of Florida, for the delinquent taxes for the year 1886, at which time the said lands were assessed to unknown owner.

(h) That on April 12, 1895, the State of Florida executed and delivered a tax deed to the lands hereinabove described, to R. B. Lutterloh, by deed, which is recorded in deed book FF at page 172 of the Public Records of Leon County.

(i) Complainants would show unto the court that the assessment of the said lands for taxes for the year 1886 was in all respects regular and according to the law, and that the proceedings leading up to the said assessment and sale to the State and the issuance and execution of the tax deed by the State of Florida, to the said R. B. Lutterloh were all in full compliance with the laws of the State of Florida, and vested in the said R. B. Lutterloh, a fee simple title to the lands aforesaid.

(j) That on April 15, 1895, R. B. Lutterloh executed and delivered a deed to the lands last hereinabove described to G. W. Rhodes, by deed, which is recorded in deed book FF, at page 176, of the Public Records of Leon County, Florida.

(k) That on December 18, 1896, G. W. Rhodes and wife executed and delivered to Joseph Moody, a deed of conveyance to the lands last hereinabove described, by deed re-

corded in deed book HH at page 307, Public Records of Leon County, Florida.

(l) That in the year 1898 Joseph Moody and wife executed and delivered a deed to the lands last hereinabove described to Lee Moody, which deed in recorded in deed book HH at page 308, Public Records of Leon County, Florida, and

(m) That on October 10, 1905, Lee Moody and wife executed and delivered a deed to the lands last hereinabove described to Luther McDaniel, who was M. L. McDaniel, the husband and father of the complainants, from whom the complainants inherited the same.

Sixth. The NW¼ of SE¼ of Sec. 3, Tp. 2 S. Range 1 E.

(a) The Northwest Quarter of Southeast Quarter of Section 3, Township 2 South of Range 1 East, was entered from the United States Government by Edward Rhodes September 18, 1854, as shown by the tract book in the office of the Land Commissioner of the State of Florida, at Tallahassee, and as shown by the tract book of original entries in the United States Land Office at Gainesville, in the State of Florida.

(b) Complainants would show unto the court that there is no conveyance of record out of the said Edward Rhodes, but that the next conveyance is a tax sale by the Tax Collector of Leon County, Florida, to the State of Florida; dated March 7, 1887, for the delinquent taxes for the year 1886, at which time the said lands were assessed to unknown owners.

(c) That on April 12, 1895, the State of Florida executed and delivered a tax deed to R. B. Lutterloh to the lands last hereinabove described by deed, which is recorded in Deed Book FF at page 172 of the Public Records of Leon County, Florida.

. (d) Complainants would show unto the court that said tax deed was executed pursuant to said tax sale made in the year 1887, and that the said sale was for the taxes for the year 1886, which were due and unpaid; that the assessment of the said lands for taxes for said year was regular in all respects, and according to law, and that the proceedings leading up to and through the said assessment and sale and the issuance and delivery of said tax deed were in full compliance with the laws of the State of Florida, and vested in the said R. B. Lutterloh a fee simple title to the lands last hereinabove described.

(e) That R. B. Lutterloh on the 15th day of April, 1895, executed and delivered a deed to G. W. Rhodes to the lands last hereinabove described by deed, which is recorded in deed book FF at page 176, Public Records of Leon County, Florida.

(f) That on November 1, 1898, George W. Rhodes and wife executed and delivered a deed to the lands hereinabove described to Lee Moody by deed, which is rcorded in deed book HH at page 309 of the Public Records of Leon County, Florida.

(g) That on October 10, 1905, Lee Moody and wife executed and delivered a deed of conveyance to the lands last hereinabove described to Luther McDaniel, the husband and father of the complainants, respectively, from whom complainants inherited said lands.

(h) Complainants would show unto the court that the said Edward Rhodes, if alive, and if dead his unknown heirs at law, legatees, devisees and grantees, are made parties defendant to this cause for the purpose of cancelling all right, title and interest of the said defendants in and to the lands last hereinabove described, and in order that the title of the complainants as against the said defendants,

and all persons claiming thereunder may be quieted and confirmed.

    \*   \*   \*   \*   \*   \*

Eighth.   Complainants would show unto the court that after the execution and delivery of all the deeds hereinabove set out to M. L. McDaniel, now deceased, from whom the complainants inherited all of said land, and now hold the same as tenants in common, the said M. L. McDaniel went into.the actual possession of all of said lands hereinabove described and occupied, improved, enclosed and cultivated same, continuously for a period of more than seven years prior to the filing of this bill of complaint and during all of said time claimed the same openly, notoriously, hostilely, adversely, exclusively and continuously against the defendants herein named as well as against any and all other persons, and that always since the death of the said M. L. McDaniel, the predecessors in title of the complainants, the said complainants have remained in continuous possession and occupancy of said lands, in the same manner, and claiming under the same rights as the said M. L. Mc-Daniel.

Ninth:   The complainants would further show unto the court that they have made diligent search and inquiry to ascertain if any of the defendants herein named are alive, and if so their place of residence or whereabout, and have been unable after such diligent search and inquiry to ascertain the name and present place of residence or whereabouts of any of the heirs at law, through or under them any of the lands herein described; that they have made diligent search and inquiry to ascertain whether or not there are any other persons claiming any right, title or interest in and to the lands involved in this suit, and after such diligent search and inquiry they have been unable to ascertain whether any of the defendants be dead or alive, or the names and whereabouts of any defendants as their heirs at

law, legatees, devisees or grantees, or the names, present place of residence or whereabouts of any other persons claiming any right, title and interest in and to the lands described herein.

FORASMUCH THEREFORE, as your complainants are without remedy, save in a court of equity, and to the end that all of the defendants herein named, if alive, and if dead their unknown heirs at law, legatees, devisees or grantees or any other persons claiming any right, title or interest in and to said lands may, if they can, show cause why your complainants should not have the relief herein and hereby prayed, and may to the best of their several and respective knowledge, remembrance, information, and belief, full, true and direct answers make to each and every one of the matters and things herein alleged and set forth, but not under oath, answer under oath being hereby expressly waived, your complainants pray that the court will decree as follows:

(1) That the complainants are the owners in fee simple of all the lands hereinabove described, and that the title of the complainants to said lands should be forever quieted and confirmed in them.

(2) That all claim, right, title and interest of the said defendants, their heirs at law, legatees or devisees, grantees, or any person claiming by, through or under them, as well as all claims of any other persons in and to said land be forever cancelled, and for naught held.

(3) That the mortgages of the Pensacola & Georgia Railroad Company to Francis M. Vose, Edward Livingston, Charles L. Perkins, composing the firm of Vose, Livingston & Company, recorded in deed book "M" at page 117 and in deed book "I" at page 524 of the Public Records of Leon County be cancelled of record.

(4) That your complainants may have such other and further relief in the premises as to the court shall seem meet and proper in equity and good conscience.''

Then follows the prayer for process. The bill of complaint is sworn to.

On the day the bill was filed, December 5th, 1925, the Clerk of the Circuit Court, pursuant to the prayer for process, issued under his hand and the seal of the Circuit Court, an order for publication of notice to the defendants as they were named in the bill of complaint, the names of some of whom, and the residences of all, being alleged by complainants to be to them unknown. The order and notice were addressed:

''To: Daniel McElvy, if living, and if dead, his unknown heirs at law, legatees, devisees or grantees, David E. McElvy, if living, and if dead his unknown heirs at law, legatees, devisees, or grantees, Amos Lee, if living, and if dead, his unknown heirs at law, legatees, devisees or grantees, Samuel L. Page, if living, and if dead his unknown heirs at law, legatees, devisees and grantees, Noah McElvy, if living, and if dead his unknown heirs at law, legatees, devisees and grantees, Francis M. Vose, if living, and if dead, his unknown heirs at law, legatees, devisees, grantees or assignees, Edward Livingston, if living, and if dead, his unknown heirs at law, legatees, devisees, and grantees, or or assignees, Charles L. Perkins, if living, and if dead his unknown heirs at law, legatees, devisees, grantees or assignees, William Bailey and John C. McGhee, as Trustees, if living, and if dead, their unknown grantees or successors in trust, Jeremiah Richard, if alive, and if dead, his unknown heirs at law, legatees, devisees, or grantees, Edward H. Rhodes, if living, and if dead his unknown heirs at law, legatees, devisees and grantees, and any and all persons claiming any right, title or interest in and to the following described land, to-wit:

"The West half of Section two (2) ; the Southeast Quarter and the Southeast Quarter of the Northeast Quarter of Section three (3), all in township two (2) South of Range 1 East, in Leon County, Florida."

The order and notice, properly captioned as to the court and style of the cause, stated the nature of the suit and required said defendants to appear to the bill of complaint on Monday, the 4th day of January, 1926, and further advised the defendants that upon their failure to appear, plead, answer or demur the decree of the court would be rendered against them. The published notice was an exact copy of the order of publication, and was published in a newspaper of general circulation in Leon County, on December 5th, 12th, 19th and 26th, 1925, and January 2nd, 1926.

None of the named defendants, nor any other persons, appeared or filed any pleading on the return day, and that day being a rule day, the Clerk, upon praecipe of the complainants, entered a decree pro confesso against all defendants as named and styled in the notice.

On February 6th, 1926, the cause was brought on for final hearing. The chancellor entered a final decree denying the relief sought and dismissing the bill of complaint at the cost of the complainants, for the following reasons recited by the chancellor in the final decree:

"1. That the complainants allege in their sworn bill that they have. made diligent search and inquiry to ascertain if any of the defendants be living and if so their present place of residence or whereabouts and that they have made diligent search and inquiry to ascertain the names and whereabouts of any of the heirs at law, legatees, devisees or grantees of any named defendants, and that they have made diligent search and inquiry to ascertain whether there are any other persons claiming any right, title or interest in said land, and their places of residence, but in

each instance they have been unable to ascertain the names or present place of residence of any defendant or any other person having or claiming any right, title or interest in said land, but the complainants do not allege or show what steps or inquiries were made to constitute ''diligent search and inquiry'' and that such a showing is necessary to give the court jurisdiction of said cause.

2. That the Act of the Legislature under which the bill of complaint is based and framed attempts to confer on the Clerk of the Circuit Court judicial powers, by attempting to authorize the Clerk to construe allegations in the bill of complaint before entering an order for publication to unknown and non-resident defendants, and in attempting to authorize the Clerk to enter decrees pro confesso, which are to be the basis of the final decrees, and that such an attempt renders the Act violative of the Constitution of the State of Florida.

3. That the act under which said bill is drawn provides for an extraordinary and an unreasonable method of removing and cancelling cloud from title, in that the length of time for the publication of notice is insufficient to consti-tute due process of law under the Constitution of the United States, and in that no proof is required other than the sworn bill of complaint and no Guardian ad Litem is appointed to represent the unknown, non-resident, and absent defendants, and that the sworn bill of complaint deprives the court of the power to inquire into the facts if a decree pro confesso has theretofore been rendered.

4. That the Act is violative of the Constitution of the United States in that it provides for the conversion of a common law action into an action in equity, where suit is brought against a person in possession of any part of the land involved in the suit.

5. That the Act is violative of the "Due Process Clause" of the Federal Constitution in that it permits the taking of a decree vesting title without due process of law.

6. The court further declines to enter a final decree as to all of the lands described in said bill of complaint, for the reason that as to the East Half of the Southwest Quarter of Sec. 2, in Tp. 2, S. R. 1 E., the complainants in deraigning their title to said last described land, failed to set forth the page of the record in which it is alleged the deed of conveyance from W. R. Wilson and his wife to M. L. McDaniels is recorded in Leon County."

From the final decree so rendered this appeal was taken, the assignments of error questioning the action of the chancellor in entering the final decree, as well as each of the reasons given by the chancellor for such action.

STRUM, J. (after stating the case):

This opinion relates solely to suits brought under Chap. 11383, Laws of Fla. (House Bill No. 296) approved November 30, 1925. What is said herein does not necessarily apply to suits to quiet title brought under other statutes.

In view of the intense activity which prevails in the real estate market in Florida, and the meteoric rise in prices, whereby countless parcels of land, heretofore of but nominal or small value, are now repeatedly changing hands at high and constantly enhancing prices, there are few matters of more vital concern to owners of real estate in Florida than a speedy and adequate method of quieting and stabilizing the title to their lands.

A brief consideration of the attitude of the courts toward legislation of the character of Chap. 11383, Laws of Florida, 1925, will be helpful in determining the questions presented by this record. In construing a Kentucky statute of substantially similar import with our own, the Supreme Court of the United States said:

"When investigating and decreeing on titles in this country we must deal with them in practice as we find them, and accommodate our modes of proceeding, in a considerable degree, to the nature of the case and the character of the equities involved in the controversy, so as to give effect to State legislation and State policy; not departing, however, from what legitimately belongs to the practice of a court of chancery." Clark v. Smith, 13 Pet. (U. S.) 95.

And in construing a Nebraska statute similar in purport and effect to our own, the Supreme Court of the United States, after discussing the purpose and function of bills of peace and bills *sui timet* and the limitations upon these remedies under existing equity practice, further said:

"The statute of Nebraska authorizes a suit in either of these classes of cases without reference to any previous judicial determinaiton of the validity of the plaintiff's right, and without reference to his possession. Any person claiming title to real estate whether in or out of possession, may maintain the suit against one who claims an adverse estate or interest in it, for the purpose of determining such estate and quieting the title. It is certainly for the best interest of the State that this jurisdicion of the court should be maintained, and that causes of apprehended litigation respecting real property, necessarily affecting its use and enjoyment, should be removed; for so long as they remain they will prevent improvement and consequent benefit to the public. It is matter of every-day observation that many lots of land in our cities remain unimproved because of conflicting claims to them. The rightful owner of a parcel in this condition hesitates to place valuable improvements upon it, and others are unwilling to purchase it, much less to erect buildings upon it, with the certainty of litigation and possible loss of the whole. And what is true of lots in cities, the ownership of which is in dispute, is equally true of large tracts of land in the country.* * * To meet

cases of this character, statutes, like the one of Nebraska, have been passed by several States, and they accomplish a most useful purpose. And there is no good reason why the right to relief against an admitted obstruction to the cultivation, use, and improvement of lands thus situated in the States should not be enforced by the federal courts, when the controversy to which it may give rise is between citizens of different States. * * * The truth is that the jurisdiction to relieve the holders of real property from vexatious claims to it casting a cloud upon their title, and thus disturbing them in its peaceable use and enjoyment, is inherent in a court of equity; and though condiitons to its exercise have at different times been prescribed by that court, both in England and in this country, they may at any time be changed or dispensed with by the legislature without impairing the general authority of the Court. Pomeroy's Equity Jurisprudence, Sec. 1398. The equitable rights of parties in Nebraska claiming the legal title to real property are simply enlarged by its statute, not changed in character.'' Holland v. Challen, 110 U. S. 15; 28 L. Ed. 52.

The cases just cited, and many others, have established the view that statutes of the character of Chap. 11383 are remedial and highly beneficial. They should therefore be liberally and reasonably construed and applied. Such statutes are designed to afford a prompt and adequate method by which the rightful owner of real property may place his own title in repost by obtaining a speedy determination and adjudication of the validity and effect of hostile claims or clouds, thus preventing one out of possession, and therefore beyond the reach of the court of law, from exercising, actively or passively, an unjustifiable interference with the legitimate use and desirable development of real property by its rightful owner. The best interests of the State and its citizens require that titles to real property be settled

and established. Such a policy is effectuated by the enactment and proper application of statutes of the character referred to.

At the outset, it should be observed that Chap. 11383, by its express terms, provides a cumulative and additional method for clearing and removing clouds from titles to land, and does not repeal any existing laws.

The case of Brecht, et al., v. Bur-Ne Co., decided at the January Term, A. D. 1926, opinion filed Feh. 26, 1926, was instituted Oct. 22, 1923, and was decided with reference to established procedure under statutes in effect prior to the enactment of Chap. 11383. Suits to quiet title brought under Chap. 11383 are therefore not necessarily controlled by what was said in Brecht v. Bur-Ne Co., *supra*.

The Constitution of Florida, Art. 5, Sec. 11, provides that: "The Circuit Courts shall have exclusive original jurisdiction in all cases in equity  *  *  *  of all actions involving the titles or boundaries of real estate  *  *  * and original jurisdiction  *  *  *  of such other matters as the Legislature may provide." By Chap. 11383, the equitable rights of persons claiming the title to real property, and the procedure by which such rights may be adjudicated, are enlarged and extended, adapting our mode of procedure in such matters to the necessities of conditions deemed by the legislature to now obtain in the State of Florida. Neither the rights of parties, nor the method of procedure is essentially changed in character, and in the respects which are now before us for decision, the procedure afforded by the act does not depart from what legitimately belongs to the practice of a court of chancery. 5 Pomeroy Eq. Juris. (4th Ed.) Sec. 2158.

Jurisdiction over proceedings to quiet title and prevent litigation is inherent in courts of equity; and although the courts have imposed limitations upon its exercise, it is always competent for the legislative power to remove these

restrictions. Holland v. Challen, 110 U. S. 15; 28 L. Ed. 52; Hughes v. Hannah, 39 Fla. 365; 22 South. Rep. 613; Johnson v. Baker, 73 Fla. 6; 74 South. Rep. 210; Greeley v. Lowe, 155 U. S. 58; 39 L. Ed. 75; Grether v. Wright, (C. C. A.) 75 Fed. 742; Southern Pine Co. v. Hall, 105 Fed. 84; certiorari denied by U. S. Supreme Court, 180 U. S. 639; 45 L. Ed. 711.

The object of Chap. 11383 is to afford a remedy by which relief may be had in three general situations, namely: (1) Whenever a person or corporation, not the rightful owner of designated real estate, shall have any conveyance or other evidence of title thereto, or shall assert any claim, or pretend to have any right or title thereto, which may cast a cloud, doubt or suspicion on the title of the real owner. Under this provision of the statute, the rightful owner may bring into court any person who is not the rightful owner, but who nevertheless asserts some claim or who pretends to have some right or title to such land, under a conveyance thereof or otherwise, and require such claimant to vindicate his claim or submit to its extinguishment by decree of the court. In such a case the claimant defendant must maintain his claim or right, or it will be disposed of by decree against him. (2) Whenever the record title is not in the true and equitable owner because of the defective execution or acknowledgment of any deed or mortgage under which the rightful owner claims, where such defectively executed or acknowledged instrument was, from the apparent purpose thereof, made and delivered by the grantor therein to convey or mortgage such real estate and was spread upon the proper record in the county in which such real estate lies. Under this provision of the statute one who claims by a title good but for the defective execution or acknowledgment of a deed or mortgage under which he claims, and which was intended to convey or mortgage the whole title, may have his title established, quieted and confirmed as

against such defective execution or acknowledgment and against those who may claim or appear to have some title or interest in the land by reason of such defects. This procedure bears analogy to the familiar equitable procedure for the reformation of instruments. (3) Where possession, with or without color of title, adverse to the record owner has ripened into a good and sufficient title in the complainant. This provision affords a means by which an existing record title may be extinguished as a cloud upon the title of one who has acquired good title by adverse possession. In any of the three situations referred to the remedy applies to both known and unknown defendants, resident or non-resident, absent or concealed, whether they be infant, adult or *non compos mentis.*

Whether or not the provisions of Chap. 11383 are broad enough to afford relief in a situation where there is a complete and unexplained break in complainant's chain of title which has not been cured by adverse possession or otherwise,—as for instance, where the title passed out of the sovereign and into an individual A; thence by *mesne* conveyance, all of which are regular, into K; there being no conveyance out of K or his heirs or any one else on his or their behalf; the next conveyance being from M to N, and thence in regular order to R, the complainant; there being a complete and unremedied break between K and M; the lands being at all times wild and unoccupied, and remaining so at the time the suit was brought, so that the break was not cured by adverse possession,—is a question not presented by this record, nor argued before us, and therefore not decided.

By Secs. 3 and 5 of Chap. 11383, it is, respectively, required that "the complainant shall set forth in his bill of complaint his claim of title * * *, and that "the complainant shall deraign his title." One who seeks the benefits of the statute must also accept its burdens, and there-

fore we hold that in suits brought under this Act the complainant must either (a) deraign his title from its ultimate source, that is, from the instrument or act which separated the land involved from the public domain and vested it in private ownership; or (b) allege facts which show in him a good title by adverse possession; or (c) allege title in himself from the defendant; or (d) allege that complainant claims from a common source with the defendant, the complainant having a better title from that source, in which event it is unnecessary to deraign the title antecedently to the common source. Long v. Stanley, 79 Miss. 298; 30 South. Rep. 823; Chiles v. Gallagher, 67 Miss. 413; 7 South. Rep. 208; Harrill v. Robinson, 61 Miss. 153; Jackson v. Port Gibson Bank, 85 Miss. 645; 38 South. Rep. 35.

The effect, if any, of Chap. 10171, Acts of 1925, (Entitled: ''AN ACT Prescribing a Limitation of Time After the Record of a Deed or the Probate of a Will, when a person may not Assert a Claim to Certain Lands and Validating Certain Conveyances,''), upon the necessary allegations and proof in these cases is not presented by this record and therefore is not now decided.

It is incumbent upon the complainant to clearly and definitely allege in his bill of complaint every fact that is necessary to entitle him to relief. Having alleged in himself a title, legal or equitable, falling within one of the four classifications just mentioned, it is further necessary for the complainant to make appropriate allegations to bring the relief sought by him within the purview of the statute, that is, his allegations must show that he seeks relief embraced within one of the three general situations mentioned in the statute. This will necessitate an appropriate allegation pertaining to the title or claim of the defendant. The complainant is required, however, to allege only so much with reference to the title or claim of the defendant as is

necessary to show that the subject matter of the suit and the relief sought, is within the provisions of the statute. Thus, if the suit is brought to remove a particular cloud, the facts which show the existence,—actual, apparent or potential,—of that cloud, are essential parts of the complainant's cause of action, and must be alleged. Hopkins v. Walker, 244 U. S. 486; 61 L. Ed. 1270. The same observation applies to a suit brought under this act to quiet a title against a defect in the execution of a deed or mortgage under which complainant claims. If the suit is to quiet and establish a title by adverse possession against the existing record title, the facts which show the existence of the record title must be alleged. If the suit is brought to quiet and establish a title as against an unknown cloud,—as for instance where a deed under which the complainant claims was executed by a grantor without mention as to his or her celibacy, and there is no joinder of husband or wife; or where a deed in complainant's chain of title is executed by persons asserting themselves to be heirs of a former record owner out of whom there is no conveyance, and the complainant is uncertain whether the former owner is dead, and if so, whether such grantors are in fact the heirs, or all the heirs, of such former owner of the record title,— then the facts which show the apparent existence of a potential cloud should be alleged. Proper allegations being made, a suit under Chap. 11383 will lie against known defendants to quiet against a cloud of a known nature, or unknown nature; and against unknown defendants to quiet against a cloud of a known nature; but a bill seeking only to quiet a cloud, the nature and existence of which is wholly unknown as against defendants who are wholly unknown, does not present a justiciable matter under this statute in its present form. Such a bill neither advises the unknown defendants of the nature of the case they are called upon to defend, nor the court what decree it shall

render, supposing the bill to be true. Welborn v. Pierce, 75 Fla. 667; 78 South. Rep. 929.

It is unnecessary, however, for the complainant to set out *in extenso* or to particularly define the title or claim of the defendant. It is sufficient, for purposes of *pleading,* to allege ultimate facts which show the assertion or existence, —actual, apparent or potential,—of such hostile title or claim, and its apparent invalidity or inferiority to title of complainant; or to allege the defect in the execution or acknowledgment of the faulty deed or mortgage in the complainant's chain of title, depending upon which form of allegation is appropriate to the theory of complainant's suit. Wildburger v. Puckett, 78 Miss. 650; 29 South. Rep. 393; Cook v. Friley, 61 Miss. 1. In other words, the complainant must allege the facts necessary to show that, but for the intervention of the court, the complainant may suffer injury. Goldsmith v. Gilliland, (C. C.) 22 Fed. 865; Campbell v. Disney, (Ky.) 18 S. W. Rep. 1027; Stark v. Starr, 6 Wall. (U. S.) 402; 18 L. Ed. 925; Wright v. Board of Supervisors, 71 Miss. 800. See also Holland v. Challen, 110 U. S. 15; 28 L. Ed. 52. This procedure complies with the rule laid down in Welborn v. Pierce, 75 Fla. 667; 78 South. Rep. 929. Of course, the complainant's *proof* must show with clearness, accuracy and certainty not only the validity of his own title, but the invalidity or inferiority of the defendant's title or claim, unless such invalidity or inferiority be admitted by the defendant by default, disclaimer or otherwise. See Brickell v. Trammell, 77 Fla. 544; 82 South. Rep. 221; Hill v. DaCosta, 65 Fla. 371; 61 South. Rep. 750; Gasque v. Ball, 65 Fla. 383; 62 South. Rep. 215; Hart v. Bloomfield, 66 Miss. 100; 5 South. Rep. 620. Examples of the form in which such necessary allegations may be made appear in paragraph "Fifth" of the bill of complaint herein, set out in the statement preceding this opinion. The allegations of paragraphs "Second,"

"Third," and "Sixth" are also sufficient in form, but are defective in substance in that the first sub-paragraph of each of such numbered paragraphs does not sufficiently allege facts disclosing the entryman such a title to the lands described in those paragraphs as would render the lands subject to State taxation as a basis for the tax title sought to be quieted by complainants. See Witherspoon v. Duncan, 4 Wall. (U. S.) 210; 18 L. Ed. 339; Carroll v. State, 44 U. S. (3 How.) 441; 11 L. Ed. 671; Bothwell v. Bingham County, 237 U. S. 642; 59 L. Ed. 1157; Irwin v. Wright, 258 U. S. 219; 66 L. Ed. 573; U. S. v. City of New Brunswick, 1 Fed. (2nd) 741; Mundee v. Freeman, 23 Fla. 529; 3 South. Rep. 153. See also note to Copp v. State, 35 L. R. A. (N. S.) 669 (670); and Wilson Cypress Co. v. Del Pozo, 236 U. S. 635; 59 L. Ed. 758; reversing *idem*, 202 Fed. 742.

We now proceed to a consideration of Sec. 3 of the Statute, relating to process. Suits of this nature are not technically suits *in rem*, nor are they strictly speaking *in personam*, but being against the person in respect of the *res*, wherein the decree does not extend beyond the property in controversy, these proceedings acquire a status that may be characterized as suits *quasi in rem*. Title Co. v. Kerrigan, 88 Pac. 356; 8 L. R. A. (N. S.) 352; 21 R. C. L. 1285. The *res*, the subject matter of the controversy, is within the jurisdiction, and it is because of that circumstance that the court is able to adjudicate the defendant's interest in it. In these suits it is not essential that the court have jurisdiction of the *person* of the defendant. Jacob v. Roberts, 223 U. S. 261; 56 L. Ed. 429. Of course, resort to constructive service by publication is predicated upon necessity, and if personal service could be effected by the exercise of reasonable diligence, substituted service is unauthorized. See Tibbetts v. Olson, decided at this term. The test, however, is not whether it was in fact possible to effect per-

sonal service in a given case, but whether the complainant reasonably employed knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort, appropriate to the circumstances, to acquire the information necessary to enable him to effect personal service on the defendant. See Title Restoration Co. v. Kerrigan, 150 Col. 289; 88 Pac. 356; 8 L. R. A. (N. S.) 682; and Hoffman v. Superior Court, 151 Cal. 386; 90 Pac. 939, approved in American Land Co. v. Zeiss, 219 U. S. 47; 55 L. Ed. 82. Security Savings Bank v. State, 263 U. S. 282; 68 L. Ed. 301; 21 R. C. L. 1925, par. 33. The result of complainant's failure or omission in this respect is stated in Hoffman v. Superior Court, 151 Cal. 386; 90 Pac. Rep. 939; Title Restoration Co. v. Kerrigan, 150 Cal. 289; 88 Pac. Rep. 356; and American Land Co. v. Zeiss, *supra*. But in cases where the statute authorizes the court to determine the question of title and decree it to the rightful owner, and where personal service cannot be effected after due diligence, the decree is valid and binding without personal service or appearance, if the statute has provided "a reasonable method of imparting notice" to the defendant, and that method has been strictly followed. Arndt v. Griggs, 134 U. S. 316; 33 L. Ed. 918; Andrews v. Guayaquil Co., 69 N. J. Eq. 211; 60 Atl. Rep. 568; Hill v. Henry, 66 N. J. Eq. 150, 57 Atl. Rep. 554; Gill v. Moore (Ala.) 76 South. Rep. 453. The question then resolves itself into one of due process to or against the defendant, rather than jurisdiction over his person.

The validity and sufficiency of the substituted or constructive process provided by this statute is questioned by the assignment of errors in four major respects, namely: (a) the sufficiency of the allegations of the bill of complaint, as a basis for issuance of the process, as to complainant's knowledge of or diligence to ascertain the names and residences of the defendants, and whether they are dead or

alive; (b) whether the Clerk of the Court may issue the process; (c) whether the notice and opportunity are afforded to defend in accord with Federal and State Constitutions; and (d) whether such process when perfected will bind all classes of defendants, both known and unknown, infant and adult, and perons *non compos mentis,* including non-residents.

(a) Within the limitations imposed by the Constitution of the United States, every State possesses exclusive jurisdiction over the persons and property within its own territory. The State may regulate the manner and conditions upon which property situate within its own territory may be acquired, enjoyed, and transferred, and the title thereto quieted and determined. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Hamilton v. Brown, 161 U. S. 256; 40 L. Ed. 691; Heck v. Nicholas, (C. C. A.) 6 Fed. (2nd) 11. The State having control over property within its own limits, the ownership of real estate therein, whether the owner be a citizen or stranger, infant, adult or person *non compos mentis,* is subject to the laws of that State relating to the holding, transfer, and the modes of establishing or quieting title to such property, unless those laws be in conflict with some inhibition of the Constitution, Federal or State, or contrary to natural justice. Arndt v. Griggs, 134 U. S. 316; 33 L. Ed. 918. The owner of land is chargeable with knowledge of general laws prescribing the manner in which it may be enjoyed or the title thereto affected. Ballard v. Hunter, 204 U. S. 241, 51 L. Ed. 461; North Laramie Land Co. v. Hoffman, 268 U. S. 276; 69 L. Ed. 953. Although a State cannot bring the person of a non-resident within its limits, it may nevertheless determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable method of imparting notice. The duty of providing certain and convenient methods of quieting, settling and promoting the secur-

ity of titles of real estate within its borders is local in its nature, and properly belongs to the State. The manner and method of discharging that duty is therefore for the determination of the State, subject only to the limitations just stated. Heck v. Nicholas (C. C. A.) 6 Fed. (2nd) 11.

It is therefore competent for the State to prescribe the conditions and circumstances under which substituted process will issue, and the method by which it may be obtained. American Land Co. v. Zeiss, 219 U. S. 47; 55 L. Ed. 82; Drake v. Fraser (Neb.), 179 N. W. Rep. 393; Aston-Jenkins Co. v. Bramel (Utah), 192 Pac. Rep. 375; Robinson ·v.·Kerrigan (Cal.), 90 Pac. Rep. 129. Under an Oklahoma Statute, construed in Romig v. Gillette, 187 U. S. 111, 47 L. Ed. 97, which authorizes service by publication ''where any or all of the defendants reside out of the Territory, or where the plaintiff with due diligence is unable to make a service of summons upon such defendant or defendants within the Territory,'' it was held that ''the facts tending to show such diligence should be disclosed, and that an affidavit merely alleging inability was one of a conclusion of law and not of facts.'' Other cases are available which reach similar conclusions in the construction of statutes which require the complainant to ''make it appear'' that defendants are non-resident, absent or unknown; or which provide that ''if the defendant be shown'' to be a non-resident, substituted process shall issue. See note to Grigsby v. Wopschall, 37 L. R. A. (N. S.) 206. Such requirements are common in statutes providing for service by publication, but the requirement is not constitutionally indispensable. Security Savings Bank v. State, 263 U. S. 282, 68 L. Ed. 301.

In this respect, Chap. 11383 is unlike the statutes referred to. Its requirements are that where the names and residence of persons interested are unknown to the complainant and have not been ascertained after diligent

inquiry, the bill of complaint shall so *state;* and further, that the complainant shall *allege* certain things in his bill with reference to whether certain defendants are dead or alive. It is true that there appears in Sec. 3 the expression "and where the bill shall show parties interested who are unknown to the complainant and that he has made diligent search and inquiry for their names and could not obtain them \* \* \*'' that such persons may be made defendants by substituted service. The words "where the bill shall show," however, are used subsidiarily to the preceding provision of the statute with reference to the same class of persons merely requiring the complainant to "state" the fact in his bill, and it was not intended by the Legislature as a requirement that the complainant allege the facts tending to support that allegation as a condition precedent to the issuance of process.

It is competent for the Legislature to authorize the issuance of substituted process upon allegations which follow the wording of the statute, unsupported by other allegations which show that personal service is impossible or impractical. Such a procedure is constitutionally valid. Security Savings Bank v. State, 263 U. S. 282, 68 L. Ed. 301; American Land Co. v. Zeiss, 219 U. S. 47; 55 L. Ed. 82.

We do not regard the provisions of Chap. 11383 as *requiring* the complainant to allege the facts which support his sworn statement or allegation with reference to interested persons whose names and residences are unknown, or his lack of knowledge and his inability to ascertain whether the defendants are dead or alive, so long as such allegation strictly follow the statute. The allegations of paragraphs First and Ninth of the bill of complaint herein, taken together, are therefore sufficient to authorize the issuance of the order of publication. See Ballew v. Young, 103 Pac. Rep. 623; 23 L. R. A. (N. S.) 1084. The requirements of the statute referred to in Ortell v. Ortell, — Fla. —; 107

South. Rep. 442, differ from those of the statute here considered.

But while allegations of a categorical nature which follow the words of the statute are sufficient as a predicate for the issuance of the order of publication, the chancellor is not thereby precluded from requiring appropriate proof of those allegations, as any other allegations, as a prerequisite to the entry of a decree. What and how much evidence the Court shall require to satisfy it upon the question of due diligence in these matters rests largely with the court granting the order. Extraordinary steps to ascertain the whereabouts of the party are not required. But judgments which exclude persons from any interest in or lien upon land should not be rendered without actual notice, when by the exercise of reasonable diligence actual notice can be given. Reasonable diligence in such matters is an honest effort,—and one appropriate to the circumstances,—to ascertain whether actual notice may be given, and if so to give it. Such effort, however, need not embrace a search in remote parts of the State, Jacob v. Roberts, 223 U. S. 261, 56 L. Ed. 429; and it is not essential that all possible or conceivable means should be used. But the effort should usually extend to inquiry of persons likely or presumed to know the facts sought.

(b) We see no objection to the issuance of the order of publication by the Clerk. The Constitution of Florida, Art. 5, Sec. 15, provides, in effect, that the Legislature may prescribe the duties of the Clerk of the Circuit Court. In issuing the order of publication, the Clerk acts ministerially but not judicially. He does not thereby adjudge the sufficiency of the allegations of the bill on which the order is predicated. That matter is for the judicial determination of the chancellor and remains before him for review at least until the entry of a final decree. For the chancellor to carefully review the sufficiency of the process before

entering a final decree, as a means of ascertaining whether the court has acquired jurisdiction, is not only permissible, but it should be, and so far as we know it is, the universal and invariable procedure. The Clerk's function in such matters is analogous to his action in entering up a default, and in some cases a final judgment, in law actions. Blount v. Gallaher, 22 Fla. 92; Gamble v. J. P. & M. R. Co., 14 Fla. 226. Such ministerial acts do not preclude the judge from opening the default or setting aside the final judgment if any jurisdictional or other deficiency be found in the process or other essentials of the procedure. The same observations apply to the authority of the clerk to enter a decree *pro confesso* under the Act.

(c) The sole restriction upon the authority of the Legislature to prescribe the manner of issuing substituted process, and the form thereof, in suits of this nature, is the due process clause of the Federal and State Constitutions. In considering the sufficiency of the statutory method of providing notice to the defendant and an opportunity to be heard in defense in these cases, reference may profitably be had to a few cases upon the subject which establish fundamental and well recognized principles:

"The Fourteenth Amendment does not operate to deprive States of their lawful power; the due process clause of that amendment only restrains such exertion of power as are so unreasonable and unjust as to impair or destroy fundamental rights, and therefore, not really within the lawful power of the State. * * * In determining the constitutionality of a State statute under the due process clause, the criterion is not whether any injury to an individual is possible, but whether the requirement as to notice and opportunity to protect property rights affected are just and reasonable. * * * To argue that the provisions of the statute are repugnant to the due process clause because a case may be conceived where rights in and to

property would be adversely affected without notice being actually conveyed by the proceedings is in effect to deny the power of the State to deal with the subject. The criterion is not the probability of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." American Land Co. v. Zeiss, 219 U. S. 47; 55 L. Ed. 82.

"Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction and that there shall be notice and opportunity for hearing given the parties. Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law established by civilized countries, this court has up to this time sustained all State laws, statutory or judicially declared, regulating procedure, evidence and methods of trial, and held them to be consistent with due process law." Twining v. New Jersey, 211 U. S. 78; 53 L. Ed. 97.

"It is the duty of the owner of real estate, who is a non-resident, to take measures that in some way he shall be represented when his property is called into requisition; and if he fails to do this, and fails to get notice by the ordinary publications which have usually been required in such cases, it is his misfortune, and he must abide the consequences. Such publication is 'due process' of law as applied to this class of cases. * * * * The owner of real estate, who is a non-resident of the State within which the property lies; can not evade the duties and obligations which the law imposes upon him in regard to such property, by his absence from the State." Huling v. Caw Valley R. Co., 130 U. S. 559; 32 L. Ed. 1045; North Laramie Land Co. v. Hoffman, 268 U. S. 276; 69 L. Ed. 953.

"It should be kept in mind that the laws of a State come under the prohibition of the Fourteenth Amendment only when they infringe fundamental rights. A law must be

framed and judged of in consideration of the practical affairs of men. The law can not give personal notice of its provisions or proceedings to every one. It charges every one with knowledge of its provisions; of (in) its proceedings it must, at times, adopt some form of indirect notice, and indirect notice is usually sufficient notice when the proceedings affect real estate.'' Billard v. Hunter, 204 U. S. 241; 51 L. Ed. 461. See also Bellingham, etc. R. Co. v. City of New Whatcom, 172 U. S. 314; 43 L. Ed. 460; and Robinson v. Kerrigan, 90 Pac. 129; and North Laramie Land Co. v. Hoffman, 268 U. S. 276; 69 L. Ed. 953.

From these cases, and others to like effect, we conclude that in suits of this nature, where personal service can not be effected after the exercise of reasonable diligence, and an honest and concientious effort to do so, appropriate to the circumstances, a reasonable method of imparting notice by publication which affords the defendant reasonable opportunity to receive the notice and present his defense, having reference to the character of the suit and the probable place of residence of the defendant, is due process of law, provided the requirements of the statue be strictly followed. The contents of such notice, however, should be sufficient to fairly communicate to the defendant the fact of the commencement of the suit, and its general nature, so that he may ascertain whether his interests are affected. Pennoyer v. Neff, *supra*.

In proceedings affecting the title to real property, the publication of notice for the following periods of time have received the sanction of the courts as complying with the due process clause of the Federal Constitution; Four weeks, coupled with varying periods of time within which the proceedings might be opened up, or the property redeemed after final decree, was held sufficient in Hamilton v. Brown, 161 U. S. 256; 40 L. Ed. 691; Ballard v. Hunter,

204 U. S. 241; 51 L. Ed. 461; Johnson v. Hunter, 127 Fed.
219; Security Savings Bank v. State, 263 U. S. 282; 68 L.
Ed. 301. In the latter case personal property was in-
volved, but the principle, for the purpose under considera-
tion, is the same. In a condemnation suit, ''publication for
three successive weeks,'' notice of objection to be filed by
the land owner in thirty days, was held sufficient. North
Laramie Land Co. v. Hoffman, 268 U. S. 276; 69 L. Ed. 953.
See also Riley v. Carrico, 110 Pac. 738, holding two weeks
publication sufficient in certain cases. Thirty days pub-
lication was deemed sufficient in Huling v. Caw Valley R.
Co., 130 U. S. 559; 32 L. Ed. 1045; and Castillo v. McCon-
nico, 168 U. S. 674; 42 L. Ed. 622. In Bellingham Bay R.
Co. v. New Whatcom, 173 U. S. 314, 43 L. Ed. 460, the
validity of an assessment for local improvements was in-
volved. The statute prescribed that notice should be given
by three successive publications in the official newspaper
of the city and that the owner of any property assessed
might within ten days from the last publication file his
objections. In view of the character of the improvements
and of the residence of the plaintiff in error,—a corpora-
tion of another State, but with its principal office in the
city where the assessment was made, and quite probably
having actual notice of the improvement,—the notice and
opportunity to be heard was held to be due process. In
that case the court observed: ''It may be that the authority
of the Legislature to prescribe the length of notice is not
absolute and beyond review, but it is certain that only in
a clear case will a notice authorized by the Legislature be
set aside as wholly ineffectual on account of the shortness
of the time.'' In Roller v. Holley, 176 U. S. 397, 44 L. Ed.
520, a case involving the foreclosure of a vendor's lien, it
was held that service of process made upon a defendant re-
siding in Virginia, requiring him to appear and answer a

suit in Texas within five days, was not a reasonable notice, and therefore not due process of law. But in this case the principles announced and adhered to were the same as those previously referred to.

The Florida Statute under consideration provides that the notice shall be published once a week for four consecutive weeks in a newspaper having general circulation in the county where the suit is brought, if there be one, and where there is no newspaper in said county other means of providing notice by posting the same in conspicuous places is provided. The character of notice last mentioned is not now before us. If the place of residence of any non-resident defendant shall be stated in the bill of complaint, the clerk is required to mail a copy of the notice, postage prepaid, to each such defendant. The Act further provides that any person not personally served with process in the suit, and who had no actual knowledge thereof before decree, may come in within six months from the rendition of such decree, and upon application showing *prima facie* evidence of interest, shall be permitted to open and relitigate the same. No showing of diligence, or reason why he did not sooner appear, is exacted of the defendant. The sole requirement is that he made a *prima facie* showing of interest in the property, that he was not personally served with persons, and had no actual knowledge of the suit. In the average suit of this nature experience teaches us that from six to twelve months elapse from the filing of the bill to the rendition of final decree. Under the provisions of the statute just referred to this will afford defendants having no knowledge of the suit, and not personally served with process, a period of from twelve to eighteen months after the publication of the first notice within which to appear and defend, unburdened by any requirement other than a prima facie showing of interest. An additional six

months is allowed for an appeal to this court. Under the doctrine announced by the cases above cited, we regard the statute as consistent with constitutional limitations, both Federal and State, as to due process of law.

(d) In American Land Co. v. Zeiss, *supra,* it was said:

"Undisclosed and unknown claimants are as dangerous to the stability of titles to real estate as other classes, and they are not deprived of their property without due process of law if compelled to establish their titles by judicial proceedings before a properly constituted tribunal on adequate published notice, if given an opportunity to be heard and properly protected in case of fraud."

Substituted process as provided in Chap. 11383, where the notice states the general nature of the suit, and is reasonably full and complete, and the procedure to obtain the same is strictly followed, applied to and will bind all classes of defendants who could not, after the exercise of reasonable diligence, be personally served with process, whether such defendants be absent or concealed, known or unknown, resident or non-resident, or their residence unknown. Ballard v. Hunter, *supra;* Arndt v. Griggs, *supra;* Hamilton v. Brown, 161 U. S. 256; 40 L. Ed. 691; Tyler v. Judges, 175 Mass. 71; Tennant v. Fretts, 68 S. E. 387; 29 L. R. A. (N. S.) 625. The importance of correctly naming designated but non-appearing defendants against whom substituted process is sought is discussed in Gill v. Moore (Ala.), 76 South. Rep. 453.

The process provided by the statute when properly invoked and employed, also applies to and will bind infants, insane persons, and persons *non compos mentis,* the statute making no exception as to such defendants. Bryan v. Kennett, 113 U. S. 179; 28 L. Ed. 908; McClymond v. Noble, 87 N. W. Rep. 838; Ann. Cas. 1916E, 1002; Moran v. Conoma, 36 N. Y. St. Rep. 680; Wheeler v. Coculley, 50

N. Y. 667; McCormick v. Paddock, 20 Neb. 486; 30 N. W. Rep. 602; Sturges v. Longworth, 1 Ohio St. 344; 32 C. J. 783.

The defendants in this suit include persons in interest whose names and residence are unknown. Neither is it known whether they are dead or alive, infants or adults. The order of publication was issued on December 5, A. D. 1925. It was published December 5th, 12th, 19th and 26th, A. D. 1925, and January 2nd, A. D. 1926, and was returnable January 4th, A. D., 1926. Taken in connection with the other provisions of the statute, hereinabove referred to, we regard the proceeding as affording the defendants due process of law, within the limitation of both Federal and State Constitutions, in so far as the length of the publication and the opportunity to appear and defend are concerned.

The following provision of the Act is also questioned:

"If the allegations of the bill are taken as confessed and decree *pro confesso* rendered, a final decree may thereupon be rendered without the taking of further proof, or reference thereof to a Master."

This provision of the Act is permissive, not mandatory. It does not undertake to coerce or control the conscience of the chancellor, nor to regulate his judicial discretion as to the character or extent of the proof he shall require to support the bill of complaint. The bill in all cases must be sworn to. If it is taken as confessed, the taking of evidence, oral or documentary, in most instances would be a mere *ex parte* repetition of matters already presented under oath. There would be no one to cross examine the complainant or his witnesses, unless the chancellor deems it desirable to conduct such an examination himself, or through a master, in which event the statute leaves that course open to him. The Legislature may lawfully prescribe

rules of procedure which the courts will observe, so long as such rules do not attempt to regulate the judicial discretion which is vested in the courts. Ruff v. G. S. & F. Ry., 67 Fla. 224; 64 South. Rep. 782.

To have one's controversies determined by existing rules of evidence is not a vested right, and the Legislature, within constitutional limitations, has the power to change the rules of evidence. Cooley's Const. Lim. (7 Ed.) 524; Sumner v. Mitchell, 29 Fla. 179; 10 South. Rep. 562; Campbell v. Skinner Mfg. Co., 53 Fla. 632; 43 South. Rep. 874. The Act does not authorize the entry of a decree altogether without sworn evidence, but prescribes the form and character of such evidence which may be accepted as sufficient in certain cases. We regard the provision as within the purview of Legislative authority, and therefore valid, especially since it is permissive only. The procedure is analagous to the entry of a judgment at law, where the case stands upon default, wherein the amount the plaintiff is entitled to recover is ascertained by "examination of the plaintiff under oath, or other proofs by affidavit or otherwise." See Sections 2622 and 2623, Rev. Gen. Stats. 1920.

The Statute further provides:

"Such suits shall proceed as in other cases in equity, except when otherwise provided herein, and except also that if the bill be taken as confessed, a guardian *ad litem* shall not be appointed unless it shall affirmatively appear that the interests of minors, persons of unsound mind, or convicts are involved."

The validity of this provision is also questioned. Constructive or substituted process, valid and sufficient as to persons *sui juris,* applies to and is binding upon infants, persons *non compos mentis,* and persons under other legal disability, unless an exception be created in favor of the classes last mentioned. Bryan v. Kennett, 113 U. S. 179;

28 L. Ed. 908; Powell v. Baer (Ky.), 136 S. W. Rep. 629; Levystein Bros. v. O'Bryan (Ala.), 17 South. Rep. 550; 30 L. R. A. 707. What has already been said as to power of the Legislature to prescribe the method of procedure and proof is again applicable here. Our statutes have so long required the appointment of a guardian *ad litem* in suits of this nature that the procedure has perhaps come to be regarded as essential in all cases. But the absence of such a requirement does not offend against the due process clause of the Constitution, and a guardian *ad litem* is not indispensable in a jurisdictional sense. The mere filing of a bill against an infant is sufficent to make him a ward of the court. Where it appears that the interests of minors, resident or non-resident, are involved, a guardian *ad litem* should always be appointed to protect those interests. But the rendition of a decree without the appointment of a guardian *ad litem,* even in a case where the interests of minors were in fact involved, would be an error in procedure only, usually rendering the decree subject to reversal on appeal, or amenable to a direct attack. Linn v. Collins, 87 S. E. Rep. 934; O'Hara v. McConnell, 93 U. S. 150; 23 L. Ed. 840; Conto v. Silvia, 49 N. E. Rep. 86. A decree so rendered would not be void, however, nor subject to collateral attack (Little v. Browning, 230 S. W. Rep. 92), but would remain in full force and effect until reversed on appeal, or set aside by direct proceedings. Linn v. Collins, *supra;* Levystein Bros. v. O'Hara, *supra;* Conway v. Clark (Ala.), 58 South. Rep. 441; Crouter v. Crouter, 133 N. Y. 55; 30 N. E. Rep. 726; Eubanks v. McLeod (Miss.), 69 South. Rep. 289; Galbraith v. Pennington, 170 S. E. Rep. 688; Trading Corporation v. Hechtkopf, 176 N. Y. Supp. 712; 31 C. J. 1121, et seq.

Another feature of the statute sought to be questioned is that which provides in effect that a suit in chancery may be

brought against persons in possession, to determine both title and right to possession, but that where any of the defendants are in possession, the suit, as to such defendants, shall be certified to the common law side so that right of such defendant to a trial by jury may be preserved. The record before us does not disclose that any of the defendants in this suit are in possession. To the contrary it appears that the plaintiffs are in possession. This provision of the Act is therefore not properly before us. If it be, however, that that portion of the Act is invalid,—a question not now decided,—it would affect only cases in which the defendants are in possession. It would not affect the validity or impair the efficacy of the statute in respect to other classes of cases embraced within its provisions, properly cognizable by a court of chancery. In re: Seven Barrels of Wine, 79 Fla. 11; 83 South. Rep. 627; Lainhart v. Catts, 73 Fla. 735; 75 South. Rep. 47.

Lastly, the chancellor declined to enter a final decree because the complainants, in deraigning their title, failed to set forth the page of the record book in which one of the deeds in their chain of title was recorded. While the chancellor's action was correct in declining to enter a decree under the circumstances, the defect, being one merely of pleading, is an amendable one, and complainants should have had an opportunity to amend before dismissing the bill.

The decree is reversed and the cause remanded for further proceedings in accordance with this opinion.

BROWN, C. J., AND WHITFIELD, ELLIS, TERRELL AND BUFORD, J. J., concur.