238 So.2d 511 (1970)
William S. GMAZ and Joanna L. Vann, Appellants,
v.
D.J. KING, Appellee.
No. 69-376.
District Court of Appeal of Florida, Second District.
August 19, 1970.
*512 Arthur N. Knudsen, Jr. of Allen, Knudsen, Swartz, Richardson & DeBoest, P.A., Fort Myers, for appellants.
William L. Stewart, of Stewart & Stewart, Fort Myers, for appellee.
McNULTY, Judge.
As a result of appellee's prior quiet title suit plaintiffs-appellants were divested of their title to certain real property in Lee County which was ostensibly held at that time by appellee under a tax deed. The final judgment in that suit was predicated upon a default entered against appellants who were purportedly brought into that action by constructive process. This action is to set aside the default in that quiet title suit, and the final decree entered thereon, for the reason that appellants received no notice thereof. They charge lack of "diligent search and inquiry" on the part of appellee in effecting the constructive process therein. The trial judge dismissed the present action with prejudice and this appeal ensued. We reverse.
At the outset we point out that appellants may well have a good defense to the quiet title action since the tax deed held by appellee is apparently void because of insufficiency *513 of notice in the tax deed proceeding. Indeed, the trial judge so held. But he dismissed the present suit under the doctrine of res judicata, holding that "* * * the search and inquiry in the quiet title suit * * * was sufficient as a matter of law and the [decree] is valid." The patent question before us, then, is the adequacy of that search and inquiry as measured against the requirements inherent in § 48.04(1), F.S. 1965.[1]
We are aided in our labors by a stipulation of all relevant facts touching on the question, for which we commend counsel. These facts, of course, reflect considerable effort on the part of appellee tending to satisfy the requisites of the statute; but we're here more concerned with what he didn't do when charged with knowledge of certain material relevant facts.
The pertinent stipulated facts reveal that at all times material herein the appellants were record owners of the subject property. In 1963, one Hansen and wife purchased a tax certificate on the subject property for the taxes due and unpaid for 1962. The taxes for 1963 and 1964 were paid by appellants themselves.
In 1965, the Hansens made application for a tax deed pursuant to the prescribed proceedings set forth in § 194.15, et seq., F.S.A. Appellee was high bidder in these proceedings and in due course received a tax deed on August 16, 1965. Significantly, during these proceedings a required "Notice of Application for Tax Deed" was mailed by the Clerk of the Circuit Court to appellants at 948 Farwood Avenue, Dayton, Ohio. This was the address of appellants as listed on the tax rolls of Lee County. The notice was returned to the clerk by the postal authorities marked "NO SUCH STREET", and the envelope so marked was placed in the original clerk's file of the proceedings. Two other mailings of the aforesaid "Notice" were made with various spellings of Farwood Avenue, but they were also returned similarly marked. Apparently, no further inquiry or effort was made by the clerk.
Thereafter, and armed with his tax deed, appellee filed the aforesaid quiet title suit on September 17, 1965, attempting service by the constructive process questioned herein. Such process was predicated on his affidavit that the residences of appellants were unknown, and he obtained his final decree entered upon default as aforesaid.
It is clear, then, that the critical time period involved is from early July, 1965 through September, 1965. During this period, the actual and true address of the appellant-Gmaz was 948 Larriwood Avenue, Dayton, Ohio;[2] and this true address was listed in two places in the public records of Lee County during the time with which we are concerned, i.e., it appeared on the tax receipt for the 1964 taxes paid by appellants, which receipt was recorded in the Receipt Book maintained by the tax collector, and it appeared on the tax assessor's "field card" which is a work sheet commonly maintained on each parcel of real estate in the county for assessment purposes. Both the Receipt Book and "field cards" are open and available to public inspection. The precise question devolving, therefore, is whether appellee was bound by the precept of "diligent search and inquiry" to examine the Tax Receipt Book maintained by the tax collector[3] and/or the "field cards" maintained by the tax assessor.
*514 The principle involved herein is clearly outlined in Klinger v. Milton Holding Co.:[4]
"When a complainant resorts to constructive service, he should make an honest and conscientious effort, reasonably appropriate to the circumstances, to acquire the information necessary to fully comply with the controlling statutes, to the end that the defendant, if it be reasonably possible, may be accorded notice of the suit." [Emphasis supplied]
and the full test of this principle is "* * * whether the complainant reasonably employed knowledge at his command" in making the appropriate effort spoken of. (Italics supplied)[5] Where personal service of process cannot be had, then service of process by publication may be had upon the filing of an affidavit on plaintiff's behalf stating the residence of the person to be served as particularly as is known after "diligent search and inquiry."[6] In addition to the publication required as aforesaid, notice of the suit must be mailed to such address as "diligent search and inquiry" may cause to be discovered.[7] We note, parenthetically, the strict compliance with these statutory procedures, at the peril of rendering the proceedings void, is rudimentary.[8]
Now, personal service in the quiet title suit involved herein was concededly impossible, so we allude to the foregoing principles of diligence and the statutory requirements in such case. We construe them in totality to require that when a "red flag" is waved to a complainant notifying or warning him of facts which put him on a reasonable course of inquiry as to the whereabouts or residence of a party-defendant to his law suit, he is bound to follow that course to its logical end.
Here, first of all, appellee acquired his tax deed at the aforesaid proceedings conducted by the clerk on the application of the Hansens. The official records of those proceedings revealed that the address in Ohio to which the clerk mailed the required "notice" to the record owners was nonexistent. This is patent from the returned unopened envelope marked "NO SUCH STREET." We think that appellee is chargeable with notice of this as well as all other matters contained in the record of the proceedings in which and through which he received his tax deed. So at this point, at least, appellee knew the address listed on the tax rolls was wrong. The "red flag" was raised.
Additionally, § 193.58, F.S.A., requires that upon receiving notice from the tax collector of the sale of any lands for taxes, the Clerk of the Circuit Court in each county shall record the particulars of such sale including the fact of the issued certificate, the description of the property, the owner and the name of the purchaser. Since, as stipulated, the appellants paid all taxes due prior to the aforesaid 1965 Tax Deed proceeding, except the 1962 taxes under which the Hansens applied for such tax deed, the aforesaid records of the clerk would have revealed that the only tax certificate issued against the subject property during the period involved herein was the one held by the Hansens. It follows, therefore, that appellee was chargeable with notice that appellants, or someone on their behalf, timely paid the taxes for *515 1963 and 1964. Just who paid them could have been determined by merely examining the tax collector's Receipt Book, and in this case the trail would have ended there. We recognize, of course, that the Receipt Book itself may not always reveal the truth, as it did here. But it's one avenue along the course opened to one in a search such as that involved here and, we think, may well be the first logical route in travelling that course. In any case, it is clear that both the Circuit Court Clerk's records of outstanding tax certificates and the Tax Collector's Receipt Book were public tax records which did or could reveal pertinent information regarding the ownership or status of the subject property; and as was said in Klinger, supra:
"* * * These are not public records in the same sense as are deed and mortgage records. They are not required to be indexed. But it would seem that where a plaintiff is attempting to foreclose tax certificates, he would probably familiarize himself with what the tax records show as regards the property. [Italics supplied]
We think such a plaintiff should familiarize himself with all pertinent information available through the public records open to him, especially when his ultimate purpose is to divest another of his property. Indeed, it would seem that "diligent search and inquiry" in effecting constructive process means nothing if it doesn't mean this.
Coming now to the question of whether appellee was also bound by diligence to search the tax assessor's "field cards" for such information as they might reveal, we find it unecessary to decide this point in view of our conclusions reached regarding the tax collector's Receipt Book. We hesitate to put these "field cards" in the same category as a Receipt Book, however, because we are aware of no statutory requirement that they uniformly be maintained by all tax assessors. We know, of course, that it is a common practice to maintain them, and that they are maintained by most, if not all, tax assessors as an expedient for keeping the assessment rolls current. It would appear, consequently, that in those counties where it is known that such "field cards" are maintained and wherein it is a common standard of precaution employed by attorneys or others to search or examine such "field cards" in passing upon merchantable title to realty, what we have hereinabove held concerning the tax collector's receipt books might well be appropriate concerning the tax assessor's "field cards." That is to say, if it is known that they might reveal pertinent information concerning the ownership or status of the property in question then they ought be examined.
At any rate, in view of our conclusions herein with respect to the failure of appellee to examine the tax collector's Receipt Book under the circumstances of this case, we hold that the constructive process attempted by appellee in his quiet title suit was fatally defective, as a matter of law, and that the final judgment subsequently entered therein upon default was void. It was error, therefore, to dismiss appellant's action with prejudice and to enter the judgment appealed from.
Accordingly, the judgment appealed from should be, and it is, reversed and set aside; and the cause is remanded for further proceedings not inconsistent herewith.
Reversed.
PIERCE, A.C.J., and MANN, J., concur.
NOTES
[1] Now § 49.041(1), F.S.A.
[2] Appellant Vann actually resided in North Carolina during this time, but this fact did not appear on any of the records of Lee County. It's irrelevant however, in view of our decision herein. Notice to Gmaz, or inquiry through Gmaz, would likely have resulted in locating Vann. Appellee's diligence here, as we shall see, stopped short of notice to Gmaz; hence, appellee can't rely on the absence of a record of Vann's residence.
[3] Required to be kept by § 193.39, F.S.A.
[4] (1938), 136 Fla. 50, 186 So. 526, 534.
[5] McDaniel v. McElvy (1926), 91 Fla. 770, 108 So. 820, 831.
[6] §§ 48.02 and 48.04, F.S. 1965, now §§ 49.021 and 49.041, F.S.A.
[7] § 48.13, F.S. 1965, now § 49.12, F.S.A.
[8] See, e.g., Young Spring & Wire Corp. v. Smith (Fla. 1965), 176 So.2d 903; Wm. E. Strasser Construction Corp. v. Linn, et al (Fla. 1957), 97 So.2d 458 and United Brotherhood of Carpenters & Joiners of America v. Graves Inv. Co., et al (Fla. 1943), 153 Fla. 529, 15 So.2d 196.