LILES, Judge.
This case is a collateral attack on the final decree in a prior case in the Circuit Court of Collier County. That case was Naples Park — Vanderbilt Beach Water District v. Van Dyk, et al., Circuit Civil No. 511-1968. The Van Dyk case was a foreclosure of special assessment liens created pursuant to Chapter 153, Part II, Florida Statutes, F.S.A. Martha Downing, the appellee here, was one of the people whose property was foreclosed. Personal service was attempted on Mrs. Downing at her address as shown on the tax rolls of Collier County and was returned un-executed by the sheriff. The Water District, plaintiff in the Van Dyk case, then resorted to constructive service of process on Martha Downing as provided in Chapter 49, Florida Statutes, F.S.A. Van Dyk resulted in a final decree of foreclosure against several properties, including Mrs. Downing’s. The property was advertised and sold to Robert Martin Scott, one of the appellants here.
Time for appeal in Van Dyk expired without an appeal being taken, and the collateral attack in the instant case resulted. The basis of collateral attack was that the circuit court lacked jurisdiction in Van Dyk because diligent search and inquiry were not used to ascertain Mrs. Downing’s residence before constructive service was made.
After a full trial the circuit court found from the evidence that diligent search and inquiry were made to ascertain the residence of Martha Downing. The court also found that the court in Van Dyk had jurisdiction to enter its decree although Martha Downing did not have actual notice; that the property involved was conveyed to appellant Scott who was a bona fide purchaser of such property; and that the price paid was so low as to shock the court’s conscience when compared to the value of the property. The circuit court established a special equity of redemption in Mrs. Downing and provided for setting aside the judicial sale. The Water District and Robert Scott then brought this appeal.
The trial judge created the special equity of redemption based on inadequacy of price. This court has held that inadequacy of price alone is not sufficient to overturn a judicial sale. Edward A. Lashins, Inc. v. Baumann, Fla.App. 1967, 201 So.2d 495; Levy v. Gourmet Masters, Inc., Fla.App. 1968, 214 So.2d 82. However, if a judgment can be sustained under any theory revealed by the record on appeal, that judgment will be affirmed even though it may have been based on *466 an erroneous theory. City of Miami Beach v. 8701 Collins Ave., Inc., Fla. 1954, 77 So. 2d 428; Berkman v. Miami National Bank, Fla.App.1962, 143 So.2d 535; Braren v. Lawyers’ Realty Abstract Co. of Sarasota, Fla.App. 1967, 196 So.2d 244.
The Downing’s collateral attack alleged lack of diligent search and inquiry to ascertain Mrs. Downing’s residence. Florida Statute 49.041, F.S.A. requires that the sworn statement referred to in Fla.Stat. 49.031, F.S.A. shall show that diligent search and inquiry have been made to discover the name and residence of a defendant before service of process can be successfully accomplished by publication. The question facing us in this case is what actually constitutes a diligent search and inquiry? McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A.L.R. 731, (1926), is the leading Florida case on this issue. At 91 Fla. 799, 108 So. 831, McDaniel tells us the test is “ * * * whether the complainant reasonably employed knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable him to effect personal service on the defendant.” Also, “ * * * the effort should usually extend to inquiry of persons likely or presumed to know the facts sought.” McDaniel, 91 Fla. at 804, 108 So. 832. A far more recent case is Gmaz v. King, Fla.App. 1970, 238 So.2d 511, at p. 514 in which Judge McNulty said regarding the principles of diligent search and inquiry, “We construe them in totality to require that when a ‘red flag’ is waved to a complainant notifying or warning him of facts which put him on a reasonable course of inquiry as to the whereabouts or residence of a party-defendant to his law suit, he is bound to follow that course to its logical end.”
The “red flag” was definitely up in the case at bar, as shown by the testimony. A sheriff’s deputy returned the original summons unexecuted as to Mrs. Downing. On the work sheet for this summons the deputy indicated that Mrs. Downing’s son worked for Gulf Glass Aluminum and that her husband Carl lived in Ft. Myers. He got this information from someone he talked to in the vicinity of the Downing property. This work sheet was in the sheriff’s office although Mr. Adams, the attorney for the Water District, never saw it. Adams went to the tax assessor’s office and found that the address listed for Mrs. Downing was the same one that the Water District had, 91st Avenue, Naples Park. He found that tax bills had been mailed to that address and had not been returned. Adams then went to Mrs. Downing’s property, and found that there was a house on it. He noted that the house was modestly furnished. There was no one at home at this house, or at the one next door, and there were no other houses in the neighborhood.
Mrs. Downing testified that she has lived in Ft. Myers for five years, and that she previously lived at 91st Avenue, Naples Park. She said that her mail is usually forwarded to her at Ft. Myers address, and that she usually spends one or two nights a week in the Naples house. Mrs. Downing said that there has been electric power in the house at all times. Mr. Downing then testified that he had a son living in Naples Park, and the son has his same initials, C. Downing, and the son is listed in the Naples phone book. The Downing’s daughter-in-law said that the post office tried to deliver to her Mrs. Downing’s notice of the suit, and she gave them Mrs. Downing’s Ft. Myers address.
It would seem that a little more effort in this case would have uncovered an address at which the Downings could be reached. Surely the “knowledge at his command” discussed in McDaniel would include inquiring of the Downings’ son, checking the city electric department, checking with the post office, or exercising more diligence to find a neighbor. We reach the conclusion that the requirement of diligent *467 search and inquiry was not met in this case. Therefore, the order of the trial court is hereby affirmed.
Affirmed.
HOBSON, C. J., and PIERCE, J., concur.