458 So.2d 381 (1984)
William C. MOUZON, Jr., Appellant,
v.
Ramona L. MOUZON, Appellee.
No. 83-1028.
District Court of Appeal of Florida, Fifth District.
November 1, 1984.
*382 James K. Freeland, P.A., and Joel A. Spector, Orlando, for appellant.
Albert P. McIntosh, Jr., Orlando, for appellee.
ORFINGER, Judge.
In this appeal from a judgment dissolving the marriage of the parties, awarding the wife custody of the three children and ordering the husband to pay monthly child support, to provide medical coverage for the children, and to pay a fee to the wife's attorney, the husband contends that the judgment was void for lack of jurisdiction. We agree and reverse.
The wife filed a petition for dissolution of marriage[1] and had the husband served *383 with process in North Dakota under sections 48.193 and 48.194, Florida Statutes (1981), Florida's Long Arm Statute. Section 48.193 says in pertinent part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
* * * * * *
(e) With respect to proceedings for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.
The complaint did not allege that the parties had maintained a matrimonial domicile in this state at the time of the commencement of the action or that the defendant had resided in this state preceding the commencement of this action, nor did it contain any allegation that would bring it within the ambit of section 48.193. The husband filed no papers or pleadings and made no personal appearance in the cause. A default was entered against him following which the court entered the judgment appealed from. The petition for dissolution contains no allegation to show that service of process under the long arm statute is appropriate here.
Failure to adequately allege in the complaint a basis for long arm jurisdiction under 48.193 voids any service of process made pursuant to section 48.194, with the result that there was no in personam jurisdiction over the respondent husband. Electro Engineering Products Co., Inc. v. Lewis, 352 So.2d 862 (Fla. 1977); Newton v. Bryan, 433 So.2d 577 (Fla. 5th DCA 1983); Wynn v. Aetna Life Insurance Company, 400 So.2d 144 (Fla. 1st DCA 1981).
Neither does the complaint or any affidavit attached to it show any of the jurisdictional requirements of section 61.132 or 61.1308, Florida Statutes (1981) so as to vest the court with custody jurisdiction, nor does the complaint even allege that the children reside in Florida, so there is no basis upon which the court could have acquired jurisdiction over the children.
Although not necessary to this decision, we feel compelled to address an issue raised in the specially concurring opinion, lest there be any misconception among the members of the bench and the bar that the concurring opinion is the accepted view of this court. We have previously pointed out that concurring opinions have no precedential value, O'Brien v. State, 454 So.2d 675 (Fla. 5th DCA, 1984), Dunn v. State, 454 So.2d 641 (Fla. 5th DCA, 1984) but they are occasionally cited, nevertheless. We reject the view expressed in the special concurring opinion to the effect that service of process to dissolve a marriage cannot be obtained under the long arm statute.
Section 48.193(1)(e) of Florida's long-arm statute provides in part that a person submits himself (herself) to the jurisdiction of the court for any cause of action arising from the doing of certain enumerated acts, among which is the maintenance of a marital domicile in the state, with respect to proceedings for alimony, child support or division of property in connection with an action to dissolve a marriage. Service under the long-arm statute is effected in the same manner as service within the state, namely by delivering a copy of the petition and the original process to the defendant's usual place of abode and leaving it with any person over age 15. Fla. Stat. §§ 48.194 and 48.031 (1981). Thus when properly perfected, "long-arm" personal service outside the *384 state is the equivalent of personal service within the state.
The concurring opinion would have us believe that the legislature intended that there be two services of process in a dissolution of marriage proceeding where one spouse was out of the state and proper "long-arm" jurisdiction could be obtained against that spouse. According to the concurrence, the petitioning spouse would be required to serve the respondent by publication in order to dissolve the marriage, and simultaneously serve the respondent with "long-arm" personal service in order to secure a money judgment for alimony, child support, and would not be entitled to claim attorney's fees because that claim isn't justified under either method of service. To the contrary, we believe any such construction of the statute is strained, and we cannot ascribe any such intention to the legislature, when no such construction is required, and where the legislative intent in that regard seems so clear. A dissolution of marriage clearly is a cause of action that can arise out of the maintenance of a marital domicile in this state, as does the claim for alimony, child support, or division of property on which it depends. The claim for attorney's fees, where properly allowable, also arises out of that relationship when the marriage is dissolved.
Section 48.193 permits personal service of process upon absent spouses "[w]ith respect to proceedings for alimony, child support or division of property in connection with an action to dissolve a marriage ..." under certain specified conditions. The verb "connect" means "1. to join or fasten together; link; unite. 2. To associate or consider as related." The American Heritage Dictionary of the English Language, 282 (1979). The noun "connection" has been defined as "the state of being connected or joined; union by junction, by an intervening substance or medium, by dependence or relation ..." Black's Law Dictionary 274 (rev. 5th ed. 1979). Clearly then, the legislature has said that where personal service (albeit under the long-arm statute) is available, that service shall be used for both the dissolution action and the money demands.
In Palmer v. Palmer, 353 So.2d 1271 (Fla. 1st DCA 1978) the court noted that prior to the enactment of section 48.193(1)(e) and (2), and 48.194, a plaintiff had to obtain personal service of process upon a defendant by serving the defendant personally in Florida. By this service plaintiff achieved in personam jurisdiction. Where personal service was impossible the only alternative open to plaintiff was to obtain service of process by publication. This type of service resulted in only in rem jurisdiction. The Palmer court recognized that with the enactment of § 48.193 a plaintiff in a dissolution of marriage action now has three methods by which he or she may serve a spouse: in-state personal service, long-arm personal service and constructive service, depending on "the alternative available and the option of the plaintiff." Id. at 1272.
Long-arm personal service is a product of the realization that it is unreasonable to require the plaintiff to lure the prospective defendant into the state so that in personam jurisdiction could be achieved. It is clear that in-state personal service (a single process) will subject a properly served defendant to the jurisdiction of the court for purposes of dissolving the marriage as well as for the appropriate money demands and child custody. Section 48.193(2) makes no distinction between in-state personal service and out-of-state personal service, but rather treats them the same way, viz:
(2) Service of process upon any person who is subject to the jurisdiction of the courts of this state as provided in this section may be made by personally serving the process upon the defendant outside this state, as provided in s. 48.194. The service shall have the same effect as if it had been personally served within this state. [Emphasis added].
The cornerstone of any analysis of long-arm personal service and its due process implications is International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, *385 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) in which the United States Supreme Court reasoned:
Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 55 L.Ed. 278, 132 A.L.R. 1357.
The adequacy of personal service under long-arm statutes similar to Florida's has been recognized by both state and federal courts. In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) the court stated:
Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding... . Of course personal service even without the jurisdiction of the issuing authority serves the end of actual and personal notice, whatever power of cumpulsion it might lack. Id. at 313, 319, 70 S.Ct. at 657, 659.
More recently, in Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) the court observed that it has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. The existence of personal jurisdiction in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought. Personal service has always been regarded as the preferred method of accomplishing this.
Service by publication under 49.011 may be made in dissolution proceedings only where personal service of process cannot be had. Fla. Stat. § 49.021 (1981). This is consistent with Mullane, supra, in which the court held that resort to publication may be had "as a customary substitute [for personal service] in another class of cases where it is not reasonably possible or practicable to give a more adequate warning." Id. 339 U.S. at 317, 70 S.Ct. at 658.
Constructive service is strictly construed against a plaintiff who seeks to obtain service of process under it because the legislature intended personal service in preference to service by publication. As stated in GMAZ v. King, 238 So.2d 511, 514 (Fla. 2d DCA 1970), quoting from the holdings in McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 831 (1926) and Klinger v. Milton Holiday Company, 136 Fla. 50, 67, 186 So. 526, 534 (1938):
When a complainant resorts to constructive service, he should make an honest and conscientious effort, reasonably appropriate to the circumstances, to acquire the information necessary to fully comply with the controlling statutes, to the end that the defendant, if it be reasonably possible, may be accorded notice of the suit. [The] full test of this principle is whether the complainant reasonably employed knowledge at his command in making the appropriate effort spoken of.
See, McGee v. McGee, 156 Fla. 346, 22 So.2d 788 (1945); Huguenor v. Huguenor, 420 So.2d 344 (Fla. 5th DCA 1982); Mayo v. Mayo, 344 So.2d 933 (Fla. 2d DCA 1977).
In Schroeder v. Schroeder, 430 So.2d 604 (Fla. 4th DCA 1983), the court suggested that personal service under section 48.193(1)(e) was appropriate in suits for alimony where such proceedings are also seeking a decree of dissolution. The court indicated that personal service on persons in foreign jurisdictions is clearly appropriate to acquire jurisdiction for the portion of the *386 petition seeking a dissolution of marriage. In the earlier case of Arnstein v. Arnstein, 422 So.2d 1052 (Fla. 4th DCA 1982), the petitioner/husband "inappropriately chose to effect personal service on his wife in New Jersey under the long-arm statute." The wife was not and had never been a resident of Florida. The court stated, however, that the court did have subject matter jurisdiction over the dissolution proceeding because it was indisputable that the wife had had adequate notice forestalling any due process attack on the final judgment. The court recognized that while section 49.011, Florida Statutes (1981) provides that service of process "by publication may be had in any court on any person mentioned in section 49.021 in any action... (4) for dissolution of marriage; ...," section 49.021 limits this by providing that service may be by publication only "where personal service of process cannot be had, ... ." The opinion concluded that this "appear[s] to contemplate personal service of process in preference to or at least as the substantial equivalent of service by publication where the current address of the party to be served is known." Id. at 1053. We need not travel that far in this case, but it is important to note that at least one court has found the statute appropriate for a dissolution proceeding only. It is difficult to perceive a different interpretation where alimony, child support and division of property is also sought in connection with the dissolution action so that the action clearly falls within the statute.
Arnstein recognizes that the purpose of service under these circumstances is not to acquire or exercise jurisdiction, but is to give notice in a due process sense. Thus, the method selected should be one reasonably calculated to bring the proceedings to the attention of the party upon whom service is sought. See Mullane, supra; Walton v. Walton, 181 So.2d 715 (Fla. 2d DCA 1966).
Because long-arm personal service is the most likely method by which to afford the respondent in a dissolution suit notice of the proceedings where in-state personal service is not available, and because the statutory framework for all forms of service is to employ the method which is best calculated to apprise the defendant of the pendency of the litigation, there is neither a statutory nor a due process reason to not approve the use of long-arm service under § 48.193 for the dissolution itself, at least in cases where alimony, child support or division of property is sought in connection with the dissolution. Assuming proper service of process, attorney's fees can also be recovered in the same manner as would be available had the respondent spouse been served within the state. The statute makes no distinction between the two types of personal service and we should not create one.
The final judgment is
REVERSED.
DAUKSCH J., concurs.
COWART, J., concurs specially with opinion.
*387 COWART, Judge, concurring specially:
This domestic relation case involves the allegations in the complaint, the process, and the service of process necessary to acquire jurisdiction over the person of the defendant and the res of the marriage sufficient for the court to adjudicate a dissolution of marriage, child custody, child support and attorney's fees.
The wife's entire complaint, filed November 10, 1982, is as follows:
THE ABOVE NAMED Petitioner would show this Court as follows:
1. This is an action for Dissolution of Marriage.
2. The marriage between the parties is irretrievably broken.
3. Petitioner has been a resident of the State of Florida for at least six (6) months prior to the filing of this Petition.
4. The parties were married on or about: May 1, 1979 In Orange County Courthouse and separated on or about August 30, 1981.
5. Petitioner is not a member of the Armed Forces of the United States.
6. Respondent is a member of the Armed Forces of the United States.
7. Petitioner resides at 3358 Waller Place, Orlando, Florida 32805.
8. Respondent resides at 114-3 Del Mar Ct., Minot, ND. 58705.
9. There were three children born of this marriage, to-wit: Vincent Albert Mouzon, 3 yeard (sic) old, born April 9, 1979; Raymond Cole Mouzon, 14 months old, born November 7, 1980; and Melisa Christina Mouzon, 3 months, born January 21, 1982. The Petitioner/Wife seeks custody of the minor children along with support for said children.
The information under oath required by the "Uniform Child Custody Jurisdiction Act" (§§ 61.1302-61.1348, Fla. Stat.) was not contained in the complaint nor in an affidavit attached thereto as required by that statute.[1] An affidavit was filed December 9, 1982, but it did not allege the children's then present address and merely gave some time periods as to the places of residence of the children Vincent and Raymond. The affidavit is not clear but the last listed time period as to any child is May 15, 1981, a time about eighteen months before the filing of the complaint.
The husband-father filed no pleadings or papers in the cause and made no personal appearances before the court nor did he do anything else by which he submitted himself to the jurisdiction of the trial court. The trial court entered a default against the husband and a final judgment dissolving the marriage, awarding the wife custody of the three children and ordering the husband to pay monthly payments of child support, to provide medical coverage for the children and to pay a fee to the wife's attorney. The husband appeals claiming, correctly, the trial court did not have jurisdiction.
Of course the circuit court had jurisdiction over the subject matter.[2] The only questions relate to whether that jurisdiction was properly invoked by essential allegations in the complaint and properly perfected by the service of adequate process.[3]
Basically there are three types of process on individuals:
(1) PERSONAL SERVICE: Personal service of process under section 48.031, Florida Statutes, must be used in all actions against natural persons, if possible, and when correctly accomplished is good in all kinds of law actions for all purposes. This service must be made within the State of Florida by a sheriff or other authorized process server. Where such personal service cannot be had two general types of substituted or constructive service of process may be available, i.e., (2) process by publication and (3) process under "long-arm" statutes.
(2) PROCESS BY PUBLICATION: Service of process by publication under section 49.021, Florida Statutes, can be used only if personal service cannot be had[4] and then only in the in rem and quasi in rem actions and proceedings specified in section 49.011, Florida Statutes.[5] Process by publication cannot be the basis for money judgments and other judgments which determine personal *388 rights and obligations,[6] and this includes judgments granting or denying alimony[7] and child support.[8] Section 49.011(4), Florida Statutes, authorizes service of process by publication in actions for dissolution of marriage.
(3) PROCESS BY LONG-ARM STATUTE: In recent years, many states have enacted so-called "long-arm statutes," authorizing constructive or substituted service of process[9] on nonresidents doing business or other acts within the forum state as the basis for obtaining judgments for money or which determine other personal rights and obligations. When such process is based on certain "minimum contact"[10] that the defendant has had within the forum state, such statutes have been held not to violate constitutional requirements pertaining to due process of law.[11] When applicable, and properly perfected, jurisdiction acquired under a long-arm statute can support a money or other in personam judgment. The general Florida long arm statutes are sections 48.193 and 48.194, Florida Statutes.[12] In relevant part section 48.193 provides as follows:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
* * * * * *
(e) With respect to proceedings for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding *389 the commencement of the action, whether cohabiting during that time or not... .
* * * * * *
(3) Only causes of action arising from acts or omissions enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section, unless the defendant in his pleadings demands affirmative relief on other causes of action, in which event the plaintiff may assert any cause of action against the defendant, regardless of its basis, by amended pleadings pursuant to the rules of civil procedure. (emphasis supplied)
The trial court in this case lacked jurisdiction three different ways:[13]
(1) AS TO CHILD CUSTODY: The trial court did not acquire jurisdiction to make a child custody determination under section 61.1308, Florida Statutes (the Uniform Child Custody Jurisdiction Act ["UCCJA"]), because of the inadequate compliance with the requirements of section 61.132, Florida Statutes. Even if the trial court could acquire in rem jurisdiction over the child custody issue independent of the provisions of the UCCJA,[14] it did not do so in this case because the complaint did not contain an allegation that the children were physically present within the state which is a prerequisite to perfecting in rem jurisdiction and, further, there was no compliance with the requirements of chapter 49[15] in order to perfect in rem jurisdiction as to the child custody issue by service of process by publication. *390 Apparently pursuant to perceived ethical duty counsel for the wife filed with the trial court a copy of a letter he received from counsel for the husband dated December 29, 1982, which is part of the record on appeal. This letter was not filed by the husband's counsel and does not constitute an appearance or a pleading and is not verified and does not constitute evidence. However, it recites that the child Raymond had resided with the husband in North Dakota since July or August, 1981, and serves to illustrate the insufficiency of the wife's compliance with essential requirements of the UCCJA.
(2) AS TO CHILD SUPPORT: The minimum contacts or acts which section 48.193(1)(e), Florida Statutes, requires for use of the long-arm statute in those domestic relations matters to which it applies, which includes child support,[16] are that (1) the defendant "maintain a matrimonial domicile in this state at the time of the commencement of this action" or that (2) "the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not."
The language in section 48.193(3), Florida Statutes, qualifies and restricts "the acts or omissions" enumerated in section 48.193(1)(e) [and in the other subheadings under section 48.193(1)] so that "only causes of action arising from" such acts or omissions (minimum contacts) occurring in Florida may be asserted against a defendant in an action in which jurisdiction is based on the long-arm statute. This statutory provision is based on constitutional necessity and means that there must be a nexus between the acts relied on as a minimum contact and the cause of action asserted. See Soule v. Rosasco-Soule, 386 So.2d 862 (Fla. 1st DCA 1980).
As to the award of a money judgment for child support the attempted use of the long-arm statute to acquire jurisdiction was ineffectual in this case because the complaint failed to allege, as is essential, that the defendant did either of the two acts set forth in the statute,[17]see Rosen v. Rosen, 306 So.2d 546 (Fla. 3d DCA 1975) (a separate maintenance action), and failed to allege facts demonstrating how the cause of action for child support arose from the doing of either of those acts. See Soule, supra. See also American Motors Corporation v. Abrahantes, 446 So.2d 240 (Fla. 3d DCA 1984), and cases cited therein.
(3) AS TO THE DISSOLUTION AND ATTORNEY'S FEES: Lastly, but most importantly, the trial court not only lacked jurisdiction because of the insufficiency of the essential allegations and proof as to the defendant's acts (minimum contacts) and their nexus to the cause of actions covered by the long-arm statute; the general long arm statute (§ 48.191(1)(e)) does not apply to causes of action to dissolve a marriage or claims for attorney's fees.[18] The general *391 long arm statute (§ 48.193(1)(e)) applies only to independent actions for support of dependents (§ 61.09, Fla. Stat.) and to the three claims for relief embraced in the statute (alimony, child support and division of property) and then only when the latter three claims are alleged ancillary to ("in connection with") a cause of action for dissolution of marriage. There is no separate specific long-arm statute that relates to dissolution of marriage in the manner that parts of the UCCJA authorize long arm jurisdiction in child custody cases. Accordingly, jurisdiction over the dissolution cause of action itself can only be obtained either by personal service of process under section 48.031, Florida Statutes, or by service of process by publication under section 49.011(4), Florida Statutes, but not under section 48.193(1)(e), Florida Statutes.[19]
This individual opinion, originally written as a majority opinion, is not intended to have anyone believe anything they do not want to believe. Everyone is free to believe as they choose. Cautious attorneys will recognize the great risk of harm of bottoming the jurisdiction of the court in a dissolution case upon a statute of questionable application. Because of inherent limitations in the concept of state territorial jurisdiction service of process of a state court made in a foreign state by a foreign sheriff does not and cannot have the same effect as the perfection of jurisdiction of a Florida court by personal service of process in Florida by a Florida sheriff.
Section 48.193(1) enumerates certain causes of action and correlates them with certain acts (minimum contacts) with which the legislature perceives the causes of action have the nexus required by constitutional due process concepts.[20] In this undertaking the statute does well but it is not perfectly drafted. Read with the necessary underlying objection in mind it is apparent that the broad unqualified clause "any cause of action arising from the doing of any of the following" means "any of the following [acts]" and connects directly with only the acts set forth in sub-subparagraphs, (a), (b), (c), (d), (f), and (g). Sub-subparagraph (1)(e) differs substantially in form, style and effect, from the other sub-subparagraphs. Before describing the essential acts ("minimum contacts"), with the necessary nexus, sub-subparagraph (1)(e) first further qualifies and limits the preceding clause "any cause of action" clause and the effect of the subsequently delineated two acts constituting the required "minimum contacts" (the maintaining of a domicile or residing in Florida), to one independent *392 "action" for support of dependents and three "proceedings" and further then restricts the application of the long-arm statute to instances where those three "proceedings" are themselves connected with an action for dissolution of a marriage. The statute on its face reveals that the draftsman knew, and was making, a careful distinction between "acts," "causes of action," "actions," and "proceedings." In view of the constitutional due process limitations these distinctions and words are very meaningful. To read the statute to connect the "any cause of action" clause directly and without qualification to the two acts or "minimum contacts" described in sub-subparagraph (1)(e) (the maintaining of a domicile or residing) is to read out of the statute and to ignore all of the carefully worded qualifying language and the constitutional due process limitation which that language recognizes and effectuates. To say you are going to feed all mares, mules and oxen connected to wagons means you are going to feed a limited class of three types of animals; it does not mean you are going to feed all animals that can be connected to wagons. And it certainly does not mean you are going to feed the wagons. Neither a recital of the general history or good purpose of long-arm statutes nor the advantages of applying the statute to causes of actions for dissolution of marriage, nor examples where others have assumed that the statute does apply to dissolution actions, nor wishing, will put necessary words into, or take applicable limiting words out of, this statute. The purpose of publishing this opinion is to point out this problem and to explain why this statute may have been so written and so limited.[21]
NOTES
[1] The complaint in its entirety says:

THE ABOVE NAMED Petitioner would show this Court as follows:
1. This is an action for Dissolution of Marriage.
2. The marriage between the parties is irretrievably broken.
3. Petitioner has been a resident of the State of Florida for at least six (6) months prior to the filing of this Petition.
4. The parties were married on or about: May 1, 1979 In Orange County Courthouse and separated on or about August 30, 1981.
5. Petitioner is not a member of the Armed Forces of the United States.
6. Respondent is a member of the Armed Forces of the United States.
7. Petitioner resides at 3358 Waller Place, Orlando, Florida 32805.
8. Respondent resides at 114-3 Del Mar Ct., Minot, ND. 58705.
9. There were three children born of this marriage, to-wit: Vincent Albert Mouzon, 3 yeard (sic) old, born April 9, 1979; Raymond Cole Mouzon, 14 months old, born November 7, 1980; and Melisa Christina Mouzon, 3 months, born January 21, 1982. The Petitioner/Wife seeks custody of the minor children along with support for said children.
[1] "Every party in a custody proceeding, in his first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last 5 years, and the names and present addresses of the persons with whom the child has lived during that period." § 61.132, Fla. Stat.
[2] Fla. Const.Art. V, § 5(b); § 26.012(2)(c), Fla. Stat. (1981).
[3] As to court subject matter jurisdiction and its invocation by pleadings and perfection by service of process, see generally Fla. Power & Light Co. v. Canal Authority, 423 So.2d 421 (Fla. 5th DCA 1982), rev. den., 434 So.2d 887 (Fla. 1983).
[4] Section 49.021, Florida Statutes, relating to service of process by publication, commences with the qualifying words, "Where personal service of process cannot be had... ."
[5] See also Herbert v. Bicknell, 233 U.S. 70, 34 S.Ct. 562, 58 L.Ed. 854 (1914); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878).
[6] See Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517 (1895).
[7] See Pawley v. Pawley, 46 So.2d 464 (Fla. 1950), 28 A.L.R.2d 1358, reh. den., 47 So.2d 546 (Fla. 1950), cert. den., 340 U.S. 866, 71 S.Ct. 90, 95 L.Ed. 632 (1950); Hunter v. Hunter, 359 So.2d 500 (Fla. 4th DCA 1978), rev. den., 365 So.2d 712 (Fla. 1978).
[8] See Palmer v. Palmer, 353 So.2d 1271 (Fla. 1st DCA 1978); Rosen v. Rosen, 306 So.2d 546 (Fla. 3d DCA 1974).
[9] Notwithstanding that the title to section 48.194, Florida Statutes, refers to "personal service outside state" and the argument that "personal service" under the long-arm statute is "better" than service of process by publication, service under the long-arm statute is not "personal service" according to the classical definition of that term, which is limited to service by an officer of the court made within the geographic or territorial jurisdiction of the court. Neither is long-arm service, in all respects, the exact constitutional, substantive, or legal equivalent of personal service nor can it be substituted at will for personal service or service by publication merely because it is arguably "better" service. Each method of service of process to perfect the jurisdiction of a court has its own exclusive place and use.
[10] When the long-arm jurisdictional due process problem also involves a conflict of laws issue, the "minimum contact" required to satisfy due process may also be a "significant connection" or "significant relation" relevant to the conflict issue. See § 61.1308(1)(b)1., Fla. Stat.
[11] The United States Supreme Court has stated that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The non-resident defendant's "minimum contacts" with a foreign state must be such as to make it reasonable to require the non-resident to go to that foreign state to there defend a law action resulting from the non-resident's prior "minimum contacts" with that foreign state. Due process requires that for use of long-arm service of process in any particular type of case it must be reasonable to say that the defendant's "connection and conduct with the forum state are such that he should reasonably anticipate being haled into court there," see World Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
[12] There are other Florida statutes providing for substituted service of process as to specific causes of action which are based on the long-arm concept. See, e.g., §§ 48.171, 48.181, 48.19, 61.1308-1312, Fla. Stat.
[13] This case illustrates that while allegations sufficient to state a cause of action for dissolution are now so simple lay persons, with the help of forms, can plead them, nevertheless, the invocation and perfection of the court's jurisdiction in domestic relations cases may not be so simple.
[14] As to a child custody issue the Uniform Child Custody Jurisdiction Act ("UCCJA") enacted in Florida in 1977 provides for a long-arm type of substituted service of process in a wide variety of circumstances. See § 61.1312, Fla. Stat. Also see Annot., Uniform Child Custody Jurisdiction Act, 96 A.L.R.3d 968, 981, § 5[a] (1980). Before enactment of the UCCJA, in the absence of personal service of process on the defendant parent, jurisdiction as to a child custody controversy could be perfected on a nonresident parent only by service of process by publication in an in rem action. This was done by analogy to the theoretical basis by which in rem jurisdiction was obtained in an action for divorce or dissolution of marriage. In the latter type of action the marriage itself was considered to be a res within jurisdiction of the court when one party to the marriage resided within the territorial limits of the court. As to the child custody issue the child was considered the res and the court had in rem jurisdiction to initially adjudicate its custody but only if the complaint alleged, and the plaintiff proved, that child was physically present within the state. See Yelton v. Yelton, 295 So.2d 119 (Fla. 4th DCA 1974); Castle v. Castle, 247 So.2d 455 (Fla. 4th DCA 1971); Reinhart v. Reinhart, 291 So.2d 103 (Fla. 1st DCA 1974); Keena v. Keena, 245 So.2d 665 (Fla. 1st DCA 1971); Powell v. Powell, 242 So.2d 138 (Fla. 1st DCA 1970), rev. den., 258 So.2d 818 (Fla. 1972); Nieburger v. Nieburger, 214 So.2d 382 (Fla. 1st DCA 1968); Smith v. Davis, 147 So.2d 177 (Fla. 1st DCA 1962). An earlier Florida case alluded to the theoretical basis as being the child's domicile. See Dorman v. Friendly, 146 Fla. 732, I So.2d 734 (1941). Also see Annot., Jurisdiction of court to award custody of child domiciled in state but physically outside it, 9 A.L.R.2d 434, 439, 440 (1950). The absolute requirement of physical presence (or domicile) was based on the need of the court to coerce obedience to its orders, an innate requirement of court jurisdiction. In such cases service of process by publication was apparently had under section 49.011(11), Florida Statutes. Section 61.1308(1)(c) relies on the physical presence of the child in this state but other parts of the UCCJA purport to both expand and limit the in rem concept of jurisdiction in child custody cases. Section 61.1308(3) states that physical presence of the child is not a prerequisite for jurisdiction to determine custody. Section 61.1308(2) provides that physical presence in this state of the child "is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination". This latter provision seems to legislatively destroy the basis for a trial court to acquire in rem jurisdiction to adjudicate child custody by service of process by publication on a nonresident parent as was done before enactment of the UCCJA. The legislature apparently intended to destroy in rem court jurisdiction over child custody questions in order that the philosophy, objectives and provisions of the UCCJA would be paramount by making the substituted long-arm service of process provided in the UCCJA exclusive except in cases of personal service of process.
[15] See §§ 49.021(1); 49.031; 49.041; 49.08; 49.10; 49.12, Fla. Stat.
[16] See Annot., Long-arm statutes: Obtaining jurisdiction over nonresident parent in filiation or support proceedings, 76 A.L.R.3d 708 (1977).
[17] This appeal does not involve the question of the sufficiency of the two acts set forth in the statute to meet the constitutional requirement of a "minimum contact" of a defendant with a forum state in the context of a particular cause of action. Nor does it involve any question as to a substantive causal nexus between a nonresident parent's "minimum contact" with a forum state and any specific assertion of one of the domestic relations' causes of actions or claims for relief named in the statute. There are substantial substantive questions of law and fact in every use of this statute.
[18] A legal precedent is a binding determination of a point of law by a court in an actual case in which that point is properly presented and duly considered and in which that determination is essential to the rationale employed and the conclusion reached in that case. When an appellate opinion assigns multiple reasons to support its determination of a point of law, or multiple points of law to support its conclusion, each reason or point becomes embodied in the rationale and resolution or determination of the case and has precedential value. Precedent has stare decisis authority as being binding on courts of a lower rank in other, subsequent cases presenting the same point of law. Words or comments in appellate opinions that are not a necessary part of the rationale or conclusion in that case are obiter dictum and have no precedential value or stare decisis effect. When an opinion expressly limits the rational basis of its conclusion, to the exact same extent it necessarily limits the perimeter of that decision's precedential basis and comments in the opinion relating to other reasoning not relied on in it, being unnecessary to support the decision in that case, is for that reason dicta and is without precedential value or stare decisis authority. Legal principle and reasoning in separate opinions of judges are not offered as authoritarian legal precedent but are properly submitted as being additional or better rationale for the conclusion in the court's opinion, in the case of specially concurring opinions, or for a different conclusion, in the case of dissents. Separate opinions are the opinions of the individual judge and do not constitute the law of the case nor the basis of the ultimate decision of the court. If this obvious statement needs citation of authority, Greene v. Massey, 384 So.2d 24 (Fla. 1980), is precedent, not dicta. Concurring opinions and dissents are cited not for their authority or source but for the inherent value of the legal reasoning they contain and for convenience or from a sense of professional courtesy or intellectual integrity. Individual judge's opinions are useful for the improvement of the law and offend no one tolerant of other opposing views. Dicta intentionally inserted in the court's opinion is far more likely than individual opinions to mislead and cause harm by impeding the proper presentation of the point because such dicta is more likely to be mistaken as binding precedent.
[19] This conclusion should not be considered to be a legislative oversight for the reason that, as to causes of action for dissolution of marriage, in rem jurisdiction perfected by service of process by publication under section 49.011(4), Florida Statutes, is both legally adequate and reasonably convenient and it avoids the constitutional due process problems involved in the requirement of minimum contacts and of a nexus between such contacts and asserted causes of action, which contacts and nexus are inherent in acquiring the type of substituted in personam jurisdiction authorized by "long-arm" statutes.
[20] See note 11, supra.
[21] See note 11, supra. The constitutional necessity for a nexus between the defendant's acts constituting the "minimum contacts" in a foreign state necessary for the law to base an implication or assumption that by such actions the defendant should have reasonably assumed and understood that he could be haled into court in the foreign state to there defend an action arising out of such acts, is sorely strained by the lack of a genuine causal nexus between the acts of maintaining a domicile, or at any time in the past residing in Florida, and proceedings for alimony, child support or equitable division of property. The causal relation between the fact of merely living in Florida and a marriage being irretrievably broken is even more difficult to honestly rationalize. In truth, the weather and water in Florida are no more likely than elsewhere to cause marriages to become irretrievably broken.