ZEHMER, Judge
(dissenting).
One of the issues on appeal is whether the trial court erred in concluding that Paul Green, attorney for appellee Pioneer Federal Savings & Loan Association, made a “diligent search and inquiry in a good faith effort to obtain and identify the residence of the appellant, Elmer J. Hudson, to no avail.” I believe the record before the trial court fails as a matter of law to establish that Green did so. The second issue on appeal is whether the inadequacy of the price received for appellant's property at judicial sale necessitates vacating the sale. I believe that it does.
The facts in the case are as follows. In 1973, J.J. Hudson and Mary Bell Hudson (the father and step-mother of appellant) mortgaged their Santa Rosa County home to a savings and loan association, which has since been taken over by Pioneer Savings, one of the appellees. . In 1974, J.J. and Mary Bell Hudson conveyed their home to appellant by warranty deed which provided that appellant was to assume the mortgage and make the payments thereon. The deed, which was duly recorded, gave appellant’s address as Route 7, Box 121, Milton, which is the address of the property involved. Neither the savings and loan nor the casualty insurer were notified of the conveyance, so the records of the savings and loan continued to show J.J. and Mary Bell Hudson as the owners.
The mortgage payments were made until J.J. Hudson’s death in 1982, after which the mortgage went into default. In June 1984, Pioneer filed a foreclosure suit against Mary Bell Hudson wherein it alleged a total indebtedness on the mortgage of $3,622. A title search thereafter conducted by Pioneer revealed appellant’s interest in the property, so Pioneer filed an amended complaint for foreclosure naming appellant and others as additional parties defendant. The amended complaint and a summons showing appellant’s address to be Route 7, Box 121, Milton, were filed on February 13, 1985, and promptly delivered to the Santa Rosa County sheriff for service. The sheriffs return, dated February 20, 1985, indicated that appellant could not *341 be found at the given address and included the notation: “Subject no longer at this address. Lives in Pensacola.” During the next four weeks Pioneer’s attorney, Paul Green, conducted an investigation as to appellant’s whereabouts for the purpose of obtaining an address for appellant so that personal service of process could be effected. On March 19, 1985, after failing to locate and personally serve appellant, Green filed his affidavit of constructive service and notice of action. On April 19, 1985, he filed an affidavit of publication of notice of action, and thereafter filed a motion for default. A default and final judgment of foreclosure were entered, and in September 1985 the property was sold at judicial sale to appellee Jaquish for $6,400, the total amount claimed by the bank for the indebtedness and all costs, attorneys’ fees, post-judgment interest, and so forth.
Although appellant discovered in November 1985 that the property had been sold at judicial sale, his motion to set aside the default and final judgment was not filed until June 1986. His motion alleged, among other things, that appellant had been making the mortgage payments to Pioneer for several years and on numerous occasions furnished Pioneer with his residence address in Pensacola, and that he did not learn of the foreclosure action until immediately prior to filing his motion. In an attached affidavit he additionally alleged (1) that he had lived in Pensacola all of his adult life and operated a construction business there; (2) that he had lived at his present address since 1983 and had his full name and address listed in the phone book since that time; (3) that the Santa Rosa County tax collector had been sending the tax bills on the subject property to his correct Pensacola address since 1983; and (4) that he had served as personal representative of J.J. Hudson’s estate and that his address had been on most of the pleadings in that probate file.
At the hearing on appellant’s motion, Hudson testified generally to the openness of his living circumstances in Pensacola and to the fact that both his business and home phones were listed. Further, he testified that in 1984 he had run for sheriff of Escambia County and in the course of the campaign had maintained a very high profile including appearances on television and radio. He testified that the property involved was worth approximately $50,000 and that even the tax assessor had valued it at over $41,000. He explained that he had not made any mortgage payments after his father’s death because he thought that his father, had credit life insurance to cover the note. He acknowledged that he had discovered the fact of the litigation and judicial sale in November 1985 when he drove by the property and found appellee Jaquish putting a new roof on the house.
Paul Green testified concerning his efforts to locate and serve appellant after receiving the sheriff’s return. He indicated that he had checked Pioneer’s mortgage records, had checked the Pensacola city directory, and had requested Mary Bell Hudson to ask other relatives about appellant’s whereabouts, all to no avail. He further testified that after checking the Pensacola telephone book and finding a listing for “E.J. Hudson,” he had personally called the number listed and had been told by the person answering that Elmer J. Hudson did not live there. His testimony in substance was to the same effect as the statements in his affidavit of search.
The trial court’s conclusion that Pioneer’s attorney had made a diligent search in a good faith effort to learn Hudson’s address, rested primarily on the evidence as recited in its order, that Paul Green obtained a telephone listing for one Elmer J. Hudson at a certain address in Pensacola, called the listed number, “inquired whether the person answering was answering to the residence of Elmer J. Hudson and informed by such person answering the telephone ‘no.’” A search of the record fails to show, however, that Paul Green ever inquired of the person who answered whether he, Green, had in fact reached the listed number, nor did Green determine the identity of the person answering, or otherwise verify that such person in fact lived at the address listed for Hudson in the telephone directory. In proving the negative of a fact, the party *342 bearing the burden of proof must lay a proper predicate sufficient to support the desired negative inference. I do not believe appellee laid a legally sufficient predicate in this case to establish that he had determined that Hudson did not live at the indicated address. Moreover, Paul Green did not contact the sheriff of Escambia County and request service on Hudson; yet Hudson had been a candidate for election to the office of sheriff about that time. Green did not pursue obvious avenues readily available for determining appellant’s address, but decided instead to resort to publication of notice. Had Green checked the records on the foreclosed property in the office of the tax assessor of Santa Rosa County (the county in which the property was located), he would have found Hudson’s correct Pensacola address.
A party is required to make a diligent search to locate the defendant before resorting to constructive service. Section 49.011, Florida Statutes (1983). The standard of diligence requires an honest, conscientious effort to locate the party through reference to readily available sources likely to provide such information. See, e.g., Gmaz v. King, 238 So.2d 511 (Fla. 2d DCA 1970); Naples Park-Vanderbilt Beach Water District v. Downing, 244 So. 2d 464 (Fla. 2d DCA 1970), cert. denied, 245 So.2d 257 (Fla.1971); McDaniel v. McElvy, 91 Fla. 770, 108 So. 820 (1926). I would hold that the record is legally insufficient to support the trial court’s finding that attorney Green exercised the required due diligence in his efforts to locate and have appellant served with the foreclosure complaint. It follows that the court erred in failing to set aside the default judgment.
In regards to the second issue on appeal, whether the inadequacy of the price received for appellant’s property at judicial sale necessitates vacating the sale, the record contained evidence that the value of the foreclosed property was $50,000, and that the tax assessor placed its 1984 valuation at more than $41,000. The property was bid in for only $6,400, the total amount claimed by Pioneer. Appellant contends that this amount, coupled with the lack of service of the complaint and notice of the sale, required the court to set aside the sale, citing Fincham v. Fincham, 443 So. 2d 312 (Fla. 4th DCA 1983), and Corbitt v. Burkette, 399 So.2d 514 (Fla. 4th DCA 1981). Appellee contends that the tax assessor’s valuation referred to was made in 1984, and since there was no evidence of its value in 1985 other than appellant’s self-serving testimony of $50,000, there is no basis to find an abuse of discretion in the trial court’s ruling.
Because I would reverse on the first point, there is no need to reach the second issue. But in view of the majority’s affirmance on point one, I also dissent from their affirmance on this point. There is simply no record basis for the trial court to conclude that the value of this house and property was not substantially in excess of the $6,400 bid. Approving a sale in that amount in the face of competent substantial evidence that the property was worth between $41,000 and $50,000 constitutes an abuse of discretion.